BLEICH, J. (Pro Tempore )
*1252 In 2014, Marcia Meredith and City Life Live, L.L.C. ("CLL"), had several bank accounts with the Post Office Employees Federal Credit Union ("Credit Union"), as well as an outstanding loan that was secured by the funds in the accounts. In February 2014, the Credit Union seized the funds in the accounts after a determination that Meredith and CLL had defaulted on their loan.
On February 4, 2015, Meredith and CLL filed a petition for damages alleging, inter alia , that CLL was unable to finance or close a transaction involving the purchase and sale of raw diamonds from Sierra Leone because CLL did not have access to the funds in the seized accounts. They alleged that this loss of business opportunity cost CLL $ 1.05 million in lost profits, as well as other costs incurred in CLL's efforts to salvage the deal. Meredith and CLL also claimed that the Credit Union breached contractual obligations and statutory duties owed to them as account holders, as well as a duty to protect their privacy. The Credit Union filed its answer on March 16, 2015. The parties engaged in discovery.
On January 17, 2017, the Credit Union filed an exception of no right of action, arguing that neither Meredith nor CLL had a right to pursue claims arising from the allegedly lost diamond sale. The trial court sustained this exception and directed Meredith and CLL to supplement and/or amend their petition to state a right of action against the Credit Union "for the recovery of the damages, losses, costs and expenses and other amounts which have been suffered, sustained, and/or incurred as a result of their inability to finance, close, and/or carry out or conclude the contracts and/or agreements for the purchase, importation, and/or sale of raw diamonds from Sierra Leone, Africa."[1] On May 3, 2017, Meredith and CLL filed their first supplemental and amended petition which added, inter alia , Ros DiMere, Inc. ("RDI"), a Texas corporation incorporated on February 9, 2014, as a plaintiff. In this petition, RDI asserted entitlement to damages as a result of the Credit Union's alleged tortious interference with a contract it allegedly entered into with CLL and Meredith for the purpose of obligating CLL and Meredith to finance the Sierra Leone diamond purchase. According to Plaintiffs,[2] all of RDI's claims asserted in the amended petition arise out of the Credit Union's alleged tortious acts of February 2014. The Credit Union filed its answer to this first supplemental and amended petition on August 4, 2017.
The Credit Union filed exceptions of no cause of action and prescription on November 15, 2017, in which Defendant alleged that RDI has no cause of action for breach of fiduciary duty or tortious interference with contract, but if it does, the claims have prescribed. The Credit Union filed a motion for partial summary judgment *1253 seeking dismissal of Plaintiffs' claims for lost profits on February 8, 2018. On March 18 and 28, 2018, Plaintiffs filed their memoranda in opposition to the Credit Union's exceptions and motion for partial summary judgment. On April 14, 2018, the trial court rendered two separate judgments. One judgment sustained the Credit Union's exception of prescription and dismissed with prejudice all claims of RDI, and one judgment granted the Credit Union's motion for partial summary judgment[3] and dismissed with prejudice all lost profit claims by Plaintiffs.
Plaintiffs took devolutive appeals from both of the trial court's April 14, 2018, judgments.
DISCUSSION
Appeal from Trial Court's Grant of Partial Summary Judgment which Dismissed the Lost Profits Claims asserted by Plaintiffs with Prejudice
According to Plaintiffs, the trial court erred in granting Defendant's motion for partial summary judgment and dismissing their claims for lost profits. On the other hand, Defendant contends that Plaintiffs' appeal from the trial court's ruling on Defendant's motion for partial summary judgment is not a final judgment subject to appeal, and as such, it should be dismissed.
This Court's appellate jurisdiction extends to final judgments identified as such by appropriate language and to interlocutory judgments when expressly provided by law. La. C.C.P. arts. 1918, 2083(C). A final judgment that only partially determines the merits of an action is immediately appealable if authorized under La. C.C.P. art. 1915. Rhodes v. Lewis , 01-1989 (La. 5/14/02), 817 So.2d 64 ; Douglass v. Alton Ochsner Medical Foundation , 96-2825 (La. 6/13/97), 695 So.2d 953 ; Lee v. Sapp, 17-0490 (La. App. 4 Cir. 12/6/17), 234 So.3d 122 ; Quality EnvironmentalProcesses, Inc. v. Energy Development Corp. , 16-0171 (La. App. 1 Cir. 4/12/17), 218 So.3d 1045. Section (B) of article 1915 authorizes the immediate appeal of partial final judgments, including a partial summary judgment that "is designated as a final judgment by the court after an express determination that there is no just reason for delay."
The April 20, 2018, grant of summary judgment dismissing Plaintiffs' claims for lost profits is a partial summary judgment under the provisions of La. C.C.P. art. 966(E),[4] and falls squarely within the parameters of La. C.C.P. art. 1915(B). Subsection (1) of La. C.C.P. art. 1915(B) requires that the trial court designate a partial summary judgment as a final judgment after an express determination that there is no just reason for delay. In the absence of such a determination and designation, the judgment shall not constitute a final judgment for the purpose of an immediate appeal. La. C.C.P. art. 1915(B)(2).
In this case, as the trial court did not designate the partial summary judgment as final and appealable, the judgment remains interlocutory, and the appeal from it is not properly before this Court. Furthermore, because Plaintiffs will have an adequate remedy through appeal following the complete adjudication of this suit, rather than exercising our supervisory jurisdiction to convert this appeal to a writ application, *1254 we dismiss this appeal without prejudice. Therefore, we will not address any assignments of error related to the April 14, 2018, partial summary judgment, which found that none of the Plaintiffs had a claim for lost profits against Defendant.
Appeal from Trial Court's Judgment Sustaining Defendant's Exception of Prescription and Dismissing with Prejudice All of RDI's Claims
According to Plaintiffs, RDI's claims against the Credit Union are not prescribed because the initial petition filed by CLL and Meredith interrupted the running of prescription on RDI's claims. Defendant contends that the trial court did not err in sustaining its exception of prescription and as such, this judgment should be affirmed.
Ordinarily, the party pleading prescription has the burden of proving that the claim has prescribed. Wells v. Zadeck , 11-1232 (La. 3/30/12), 89 So.3d 1145 ; Campo v. Correa , 01-2707 (La. 6/21/02), 828 So.2d 502 ; Evans v. Heritage Manor Stratmore Nursing & Rehabilitation Center, L.L.C. , 51,651 (La. App. 2 Cir. 9/27/17), 244 So.3d 737, writ denied , 17-1826 (La. 12/15/17), 231 So.3d 639. However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to show that the action has not prescribed. Id.
The petition, coupled with the supplemental and amended petition, shows that RDI's tort claims against the Credit Union as alleged in the amending petition filed on May 3, 2017, are prescribed on their face, since they were first asserted more than three years after Defendant's alleged wrongful acts in February of 2014. Thus, it was RDI's burden to establish that their claims were not prescribed.
La. C.C.P. art. 1153 sets out the requirements for giving retrospective effect to an amended petition:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
Article 1153 does not specifically refer to parties, but to claims or actions. However, see , Stenson v. City of Oberlin , 10-0826 (La. 3/15/11), 60 So.3d 1205, 1214, citing Moore v. Gencorp, Inc. , 93-0814 (La. 03/22/94), 633 So.2d 1268, 1270 (" Article 1153... provides a means for determining when an amendment adding a plaintiff, claim, or defendant relates back to the date of an earlier filed pleading for prescriptive purposes.").
In Giroir v. South Louisiana Medical Center , 475 So.2d 1040, 1044 (La. 1985), the Louisiana Supreme Court established four criteria that must be satisfied in order to allow for the addition of plaintiffs to an original timely filed petition:
An amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
All four elements set forth in Giroir are required for the amendment adding additional parties to relate back to the original petition. Eaglin v. Eunice Police Dept. , 17-1875 La. 6/27/18, --- So. 3d ----, 2018 WL 3154744 ; Bates v. City of Shreveport , 46,432 (La. App. 2 Cir. 6/22/11), 69 So.3d 1205.
*1255 Defendant does not dispute that RDI's newly asserted claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading (element # 1), or that RDI and CLL and Meredith are sufficiently related (element # 3). According to the Credit Union, however, Plaintiffs failed to prove that Defendant either knew or should have known of the existence and involvement of RDI (element # 2), and, it would be prejudiced if RDI's claims were allowed to relate back to those asserted in the original petition filed by CLL and Meredith (element # 4), and the trial court did not commit manifest error in sustaining the Credit Union's exception of prescription.
The following is excerpted from the trial judge's oral reasons for judgment:
Ms. Meredith made it very clear in her testimony that these were separate and distinct entities. She said, "I wanted to keep it separate on purpose." She also said, "I didn't want it convoluted." She said that the parties to the transaction, the diamond deal in February of 2014, [were] Ros Dimere and a seller ... UDK Enterprises ... "My Ros Dimere and then UDK."
There doesn't seem to be any confusion about that. And she testified that she intentionally wanted to keep those entities separate. Mr. Pesnell, I agree with you that you can form an LLC or an entity for any matter that's not against public policy or illegal, and people do it for tax purposes and liability purposes, and they do it intentionally, and if they're sophisticated enough they can form those entities and protect their assets, their individual assets and the assets of the individual entities.
So it appears that what Ms. Meredith is asking the Court to do is give her cake and let her eat it, too. She wants to be protected against anyone suing her entities for her personal assets, and then she wants to protect her individual entities against any lawsuits or tax liabilities, but when the tables are turned she wants to be able to say, oh well, we're all just convoluted, it's all the same thing, you know, I'm Ros Dimere, and I'm City Life Live, and it's all the same thing, but it isn't. She intentionally formed different entities, she was in the best position to know which entity should have brought this lawsuit, and for whatever reason, Ros Dimere, ... which was the entity that was involved in this transaction according to her, and the only entity involved in this transaction according to her, unfortunately she did not name them as a party in the original petition filed on February 4, 2015. It was not until after the parties came to court and had an adverse ruling from this Court that a supplemental petition was filed in May, on May 3rd of 2017, and for the first time Ros Dimere was named as a party to the lawsuit for damages, which allegedly took place in February of 2014.
You've argued that Ros Dimere is claiming a tort action in this matter, and so clearly there has been in excess of one year from the date of the damage or injury, from February 2014 to May 3rd of 2017, so the Court agrees with defense that this matter has prescribed, and the Court will grant the exception of prescription....
[T]he purpose for reading [selected portions from Ms. Meredith's deposition aloud] is to show that Ms. Meredith seems to be very sophisticated. She understands the different entities, she said that she kept them separate on purpose, she had a reason for doing that. She had full knowledge of what was taking place. She did not seem to be confused to me at all over those several pages. She seemed to be just the opposite. She seemed to be very sophisticated and understood full good and well that she had separate entities. City Life Live is in the *1256 business of entertaining; and Ros Dimere is in the business of buying precious stones and diamonds, and [Ms. Meredith] said she kept it separate on purpose. She did it for a reason, that's ... why people form entities so they can protect their individual assets from any liability, and also protect the assets of the individual entities against any other liability.
Unfortunately for Ms. Meredith, she simply didn't name the entity that she should have named in the original petition. That matter prescribed as I ruled on earlier ...
While the trial judge did not specifically discuss the Giroir factors in his reasons for judgment, he did emphasize the fact that RDI and City Life Live were two separate and distinct entities and note that more than two years had passed between the original petition and RDI's supplemental and amended petition.
The record establishes that both CLL and Meredith were account holders with the Credit Union, and that RDI was not. The record further shows that there is absolutely no mention of RDI (or even some unnamed third party) in Plaintiffs' pleadings until the amended pleading filed on May 3, 2017. There was no reasonable and timely notice to the Credit Union that RDI was in existence, that it had a relationship with either or both CLL and Meredith and a connection to the diamond deal in Sierra Leone, or that RDI would have a potential claim arising out of Defendant's allegedly tortious actions in February 2014. See , Ahmed v. Downman Development, L.L.C. , 17-0114 (La. App. 4 Cir. 12/28/17), 234 So.3d 1111 (in which the Fourth Circuit also noted that a corporate entity, even if wholly owned by a sole shareholder, is a separate legal person, and as such, is not treated as one in the same as its sole shareholder). On this record, we find that Plaintiffs failed to establish that the Credit Union knew or should have known of the existence and involvement of RDI ( Giroir element # 2).
While the court in Giroir, supra , did not place any time limits on the relation back of an amended pleading, the passage of time between the filing of an original petition and an amended petition generally weighs against a finding that the amended petition relates back to the timely filed petition. Bates, supra . RDI's amended petition was filed more than two years after CLL and Meredith's original petition and more than three years after the Credit Union's allegedly tortious conduct. As noted above, because RDI was not an account holder with Defendant, the evidence RDI would rely on to establish its claim is separate and distinct from that of CLL and Meredith. Under the facts and circumstances of this case, Defendant would definitely be prejudiced in the preparation of its defense as a result of the delay in the addition of RDI to this case ( Giroir element # 4).
We find no manifest error in the trial court's judgment sustaining the Credit Union's exception of prescription. We will not address Plaintiffs' remaining assignment regarding Defendant's exception of no cause of action, which is rendered moot by our disposition.
CONCLUSION
For the reasons set forth above, the appeal from the April 14, 2018 grant of partial summary judgment is dismissed, and the April 14, 2018 judgment sustaining the exception of prescription filed by Defendant, Post Office Employees Federal Credit Union, is affirmed. Costs are assessed to Plaintiffs, City Life Live, L.L.C., and Marcia D. Meredith.

In the event that Meredith and CLL failed to supplement/amend their petition as ordered, the trial court's order provided that the claims asserted by these two Plaintiffs against the Credit Union "for the recovery of all of those damages, losses, costs and expenses, and/or other amounts in the above referenced proceeding will be dismissed without prejudice" at Plaintiffs' cost.

Whenever the term "Plaintiffs" is used, it will refer to all three: Meredith, CLL and RDI.

This judgment was not designated as a final judgment as required by La. C.C.P. art. 1915(B)(1).

La. C.C.P. art. 966(E) provides that a summary judgment may be rendered dispositive of a particular issues, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.