PITMAN, J.
Plaintiff John Mack Evans, Sr., appeals the judgment of the trial court which sustained the exception of prescription filed by Defendant Heritage Manor Stratmore Nursing & Rehabilitation Center, L.L.C., et al.[1] ("Heritage Manor"), and dismissed *739 his suit for medical malpractice and other actions. For the following reasons, we reverse.
FACTS
Plaintiff, age 77, sustained a massive stroke at home in November 2011. The effects of this stroke were many, including left side paralysis, affected speech, inability to walk, incontinence, emotional and mental anguish and damage and erratic behavior. After his stroke, Plaintiff became easily agitated and verbally and physically aggressive. He is bedridden and requires assistance in transferring to and from his wheelchair.
Following his stroke, Plaintiff was hospitalized for several months and then was admitted to Heritage Manor on February 21, 2012, by his treating physician, Dr. Robert Hernandez, for rehabilitation in the skilled nursing facility. Dr. Hernandez, an internal medicine specialist, is the medical director of Heritage Manor, as well as The Glen, another nursing home in Shreveport. Dr. Hernandez's treatment for Plaintiff at the skilled nursing facility was to include, but not be limited to, occupational therapy, physical therapy and speech therapy. Because Plaintiff was paralyzed on his left side, Dr. Hernandez's standing orders were to turn Plaintiff often and to keep him clean and dry to prevent the development of decubitus ulcers, pressure sores and complications which would jeopardize his rehabilitative care.
On March 14, 2012, Samantha Edwards, a certified nursing assistant and employee of Heritage Manor, entered Plaintiff's room around 5:00 a.m. to change his diaper and T-shirt, which were wet with urine. Plaintiff protested her insistence that she change him and he resisted care. Rather than seeking assistance from an LPN on duty, Ms. Edwards persisted and became more aggressive in her effort to change Plaintiff. Her efforts to force care on him resulted in Plaintiff taking a swing with his right hand and striking her. In what Ms. Edwards characterized as an immediate reflex type response, she struck Plaintiff with her fist and long acrylic nails on and around his right eye.
As a result of the incident, Plaintiff sustained lacerations and scratches above his right eyebrow in and around his right eye. His wound bled and there was bruising around his right eye and eyebrow with a red area in the shape of the letter "C" beginning midway from the right edge of his eyebrow and continuing to the top of his right cheekbone. He also had bruising under his right eye and on the inner aspect of his nose. Ms. Edwards was immediately discharged from employment at Heritage Manor.
After the incident, Plaintiff was afraid of the caretakers at Heritage Manor and announced he would protect himself and strike them if he was not treated appropriately. His behavior worsened and he became physically abusive, aggressive and difficult to control. Allegedly, because of the adverse effect of the incident on Plaintiff's emotional and psychological condition, his treating physician transferred him to Brentwood Hospital in May 2012 to be treated by a psychiatrist.
The State Department of Health and Human Resources ("DHH") investigated the incident and found Heritage Manor violated regulations in several respects, including failing to obtain references on Ms. Edwards before hiring her and failing to exercise reasonable supervision to prevent residents from being injured. The DHH discovered that Ms. Edwards had disclosed in her employment application that she had previously been convicted of simple battery and that Heritage Manor had failed to follow its policy of not employing any person convicted of a crime.
*740 Ms. Edwards was questioned about the incident and originally stated that Plaintiff was injured when she pulled his T-shirt over his head while attempting to change him; however, she later corrected her statement in a second interview with the Shreveport Police and stated that "when he struck me, my reflex-I reflex and I hit him back." She claimed she did not intend to injure him and regretted her action; it was simply an immediate response to his striking her. She was eventually cited for battery of the infirm. It is unclear what came of the citation, but she testified at a deposition that the "arrest" was later expunged from her record.
Because Plaintiff had been receiving medical care and treatment at Heritage Manor at the time of the incident on February 18, 2013, and the incident occurred during the course of medical care, he filed a request for a medical review panel in accordance with the Louisiana Medical Malpractice Act ("LMMA"). In an opinion dated September 8, 2014, the medical review panel stated:
The panel finds that Heritage Manor did fail to adequately vet the ACNA for past history and employment record and as such bears part of the blame for placing her in the situation where she struck Mr. Evans. However, the action of hitting Mr. Evans was the ACNA's action alone. The resulting injury from this physical contact, which was a laceration above the right eye, is related to this incident. However, no long-term complications, change in behavior, or other detrimental effects resulted from the incident. The patient's behavior after the incident was essentially the same as his behavior before the incident and his overall medical course is what would have been expected if the incident had not occurred.
A supplemental opinion was rendered on November 3, 2014, and the medical review panel stated:
The panel finds that Edwards was an employee of Heritage Manor when the conduct that is the subject of this proceeding occurred. The panel finds that the conduct of Edwards failed to comply with the appropriate standard of care. That conduct caused the injuries to the patient, as described in the panel's September 8, 2014, Opinion. Thus both Heritage Manor and Edwards were at fault, causing the injuries, as described in the September 8, 2014, Opinion.
On December 2, 2014, Plaintiff filed suit against Heritage Manor and alleged he was due damages under the LMMA, as well as for breach of fiduciary duty, failure to provide the care for which he had contracted and failure to provide sufficient training for staff and training of all rights and protection due patients under the Louisiana Nursing Home Bill of Rights ("LNHBR"), all of which caused injury to him. Heritage Manor answered and denied all allegations. It also alleged in its answer that at all times, it was a qualified health care provider pursuant to the LMMA and that to the extent any of Plaintiff's claims constituted "medical malpractice" within the meaning of the LMMA, any liability on its part was limited pursuant to that act.
On August 19, 2016, Plaintiff filed a motion for partial summary judgment on liability in its medical malpractice claim and attached the following 12 exhibits: (1) the opinions of the medical review panel; (2) an affidavit of Sandra Furguson, an RN expert and investigator for DHH with attachments; (3) Dr. Hernandez's affidavit; (4) the deposition of Shreveport Detective Holmes with exhibits; (5) the deposition of Samantha Edwards with exhibits; (6) portions of the deposition of Wesley Pepitone, Administrator of Heritage Manor;
*741 (7) fingernail policy of Heritage Manor; (8) portions of Heritage Manor's employee personnel file on Samantha Edwards; (9) photographs of Plaintiff; (10) portions of Brentwood's records on Plaintiff, including Dr. Boswell's psychiatric evaluation and discharge summary; (11) Plaintiff's admission form of Dr. Patterson, Willis-Knighton Pierremont; and (12) Heritage Manor policy against hiring anyone convicted of a crime.
Dr. Hernandez's affidavit states:
"For bedridden patients, like Mr. Evans, part of their treatment is to keep them clean and dry as well as turning them frequently to reduce the risk of pressure sores, decubitus ulcers, infections, etc. so they can continue their rehabilitation treatment."
On August 22, 2016, Heritage Manor filed an exception of prescription and claimed that the incident occurred on March 14, 2012, but Plaintiff's petition was not filed until December 2, 2014. It claimed that Plaintiff's petition, filed more than two years after the date of the injury, is prescribed on its face and Plaintiff has the burden of proving some interruption or suspension of prescription in his favor. Further, it claimed in anticipation of Plaintiff's argument that prescription was suspended by the filing of a medical malpractice claim, that Plaintiff's claims arising from a battery did not arise from medical treatment and, therefore, are not malpractice claims pursuant to the LMMA. It also argued that the LMMA applies only to malpractice as defined in the act, and the filing of a complaint of malpractice did not interrupt or suspend prescription with respect to nonmalpractice claims. Last, it claimed that Plaintiff's nonmalpractice claims, not being subject to any suspension or interruption, have prescribed.
At the hearing on the exception of prescription and Plaintiff's motion for partial summary judgment, Dr. Hernandez testified regarding Plaintiff's care given at Heritage Manor, stating that the changing of the patient was "good medical care," but not considered medical treatment, even though the section of the patient's admission form was checked calling for him to be turned periodically and to be kept clean and dry. The purpose of the care was to prevent the development of decubitus ulcers ; and, in that regard, the care was successful.
Ms. Furguson, the RN who performed the investigation for the DHH, was available to testify, but did not. In her report for the DHH, she addressed the negligent hiring issue, the striking and the issue of Ms. Edwards' long fingernails. Plaintiff sought a stipulation allowing the entry in the record of her report in lieu of testimony, but Heritage Manor's attorney objected and stated that it was simply a survey report, which was specifically inadmissible pursuant to La. R.S. 13:3715.3, as it is considered a peer review report conducted by the state as a matter of law. He also argued that the report was inadmissible because it contained hearsay evidence. The trial court allowed Plaintiff's attorney to proffer the report.
The trial court heard the exception and, during the hearing, stated that the issue as the court appreciated it was:
[w]hether or not keeping Mr. Evans clean and dry and changing his diaper is that considered medical treatment sufficient to meet the act; and if it is, Number 2, whether or not the physical altercation or contact between he and the CNA is also medical treatment sufficient to be covered by the act.
It sustained the exception of prescription, finding the striking incident was an intentional tort, not considered medical malpractice; and, thus, the prescriptive period *742 had expired. Because the suit had not been filed by March 14, 2013, all claims had prescribed. After sustaining the exception of prescription, it did not rule on Plaintiff's motion for partial summary judgment. Plaintiff appeals the judgment of the trial court dismissing his suit as untimely.
DISCUSSION
Classification of employee's action as an intentional tort
Plaintiff argues that the trial court erred in classifying Ms. Edwards' striking of him during medical care as an intentional tort, rather than considering that the tort occurred during the course of medical care, which he contends meets the definition of malpractice under the LMMA. He further argues that the definitions found in La. R.S. 40:1231.1(A)(9), (10), (13) and (22), which define "health care," "health care provider," "malpractice" and "tort," respectively, indicate that the incident at issue is covered by the LMMA.
Plaintiff asserts that it is clear his injury was caused during the time period when Ms. Edwards was attempting to provide medical care to him and that care was described by Dr. Hernandez as "good health care," who also testified that keeping patients clean and dry was part of their medical care for people in Plaintiff's bedridden condition. Plaintiff points out that Heritage Manor did not present any evidence or witnesses to testify that keeping a person who is at high risk for ulcers clean and dry is not health care under the LMMA. Therefore, that evidence went uncontroverted. He states that the injury occurred during or related to his health care, and the claim falls under the LMMA. In fact, the matter was submitted to the medical review panel, which rendered a decision that Ms. Edwards' actions fell below the standard of care.
Plaintiff further argues that the trial court erred in holding that Ms. Edwards committed an intentional tort and not an act of medical malpractice, since an intentional act can only occur when one of two things happens, i.e., either the actor consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or the actor knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Mere knowledge and appreciation of a risk does not constitute intent. He contends that because Ms. Edwards' act was not an intentional tort, his damages are covered by the LMMA and the prescriptive periods of the LMMA apply to the facts of this case. He states that prescription statutes are strictly construed against prescription and in favor of the claim being sought to be extinguished. If prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. He asserts that under La. R.S. 40:1231.8(A)(2)(a), prescription is suspended by the filing of the request for review of a claim with the Patients' Compensation Fund ("PCF") until 90 days following notification, by certified mail, to the claimant or his attorney of the issuance of the opinion by the medical review panel. The statute states that the filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, all joint tortfeasors, including, but not limited to, health care providers to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
Plaintiff also argues that recent jurisprudence has addressed the issue of applying prescription to medical malpractice claims and ordinary torts (nonmedical claims) and has expanded the scope of the medical malpractice suspension of prescription *743 to include nonhealth care providers who are joint tortfeasors with qualified health care providers alleged to have committed nonmedical ordinary torts. For this reason, he contends that the LMMA prescription and suspension statute applies to all of his claims against Heritage Manor, medical and nonmedical. Because the lawsuit was filed in district court within 90 days of the last medical review panel opinion rendered in November 2014, he claims his suit has not prescribed and the trial court erred in finding that it had and in failing to allow the suit, based on other claims, to proceed.
Plaintiff further argues that the trial court erred in refusing to admit the DHH report he sought to introduce into evidence and cites La. R.S. 13:3715.3 for the proposition that although peer review findings by a public hospital are protected and deemed confidential under this law, state regulatory agencies are excepted under certain conditions. The statute states that when a party seeks to admit into evidence surveys, statements of deficiencies and related documents, any party to a civil action may request, and the court, using its discretion, may conduct a voir dire of the witness supporting the surveys and related documents to determine whether the deficiency is based on reliable evidence.
Heritage Manor argues that because Plaintiff's petition was prescribed on its face, he bears the burden of proof that his claim has not prescribed. It is the Plaintiff's burden to show that his claim benefitted from interruption or suspension of prescription or from some other exception to the applicable one-year prescriptive period. It claims that the salient issue before the court is whether the submission of Plaintiff's claim to the Division of Administration pursuant to La. R.S. 40:1231.8 resulted in a suspension of prescription and that it is his burden to prove his is a malpractice claim that falls under the LMMA.
Heritage Manor further argues that the trial court was correct when it asked if a punch to the face is medical treatment so that the LMMA applies to the situation at bar. It argues that the court must examine whether an act of negligence constitutes malpractice just because it occurs as part of the "handling of a patient" or during the "confinement" of a nursing home resident. It claims the altercation that occurred between Plaintiff and Ms. Edwards did not occur during treatment or medical care since she was only there to change his shirt and diaper.
Heritage Manor also argues that the trial court correctly found that Ms. Edwards' action in striking Plaintiff is an intentional tort and, as such, is excluded from coverage under the LMMA. It claims that the trial court's conclusion was reasonable; that because the act was deemed intentional, Plaintiff's petition is prescribed on its face; and that Plaintiff is required to prove that there was otherwise some interruption or suspension of prescription.
Heritage Manor further claims that the trial court correctly dismissed alternative theories of liability for Plaintiff's damages, which included attempting to force care upon him; Ms. Edwards' wearing of long acrylic fingernails; negligent hiring of Ms. Edwards, without which she would not have been in a position to punch Plaintiff in the face; and lack of supervision that might have prevented Ms. Edwards from punching Plaintiff. It contends that none of these theories convert the punch thrown by Ms. Edwards into the realm of medical treatment, and none constitute malpractice. It claims the alleged negligent hiring of Ms. Edwards is an administrative function and not a part of the delivery of care to patients and that none of these claims *744 would qualify as medical treatment under the LMMA.
Heritage Manor further claims that, in regard to the trial court's failure to admit the DHH report into evidence, the statute cited by Plaintiff for the admission of the document makes the admission discretionary with the trial court by using the words "may be ... admissible" if the deficiencies have been admitted by the health care provider or have been declared valid after an appellate process has been followed by the administrative agency in charge of reviewing surveys. Because that process had not been followed at the time of the hearing on the exception, it contends that the trial court did not err in refusing to admit it into evidence and only allowing the report to be proffered.
Determination of coverage under the LMMA
The pertinent definitions of the LMMA are found in La. R.S. 40:1231.1(A)(9), (10), (13) and (22), respectively, as follows:
(9) "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.
(10) "Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, ... employed by, referred by, or performing work under contract for, a health care provider or other person already covered by this Part, registered or licensed practical nurse or certified nurse assistant ... or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.
(13) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.
(22) "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
In Richard v. Louisiana Extended Care Centers, Inc. , 02-0978 (La. 1/14/03), 835 So.2d 460, the court stated as follows:
In the case of a nursing home, the nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. However, in our view, it was not the *745 intent of the legislature to have every "act ..., by any health care provider ... during the patient's ... confinement" in a nursing home covered by the MMA. La. R.S. 40:1299.41(A)(9) defining "health care" under the MMA) [.]
In Coleman v. Deno , 01-1517 (La. 1/25/02), 813 So.2d 303, the Louisiana Supreme Court stated that to be covered under the LMMA, the negligent act must be related to medical treatment. The court set forth a six-part test to determine whether a negligent act by a health care provider was covered under the LMMA, including the following:
(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill, (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, ... (3) whether the pertinent act or omission involved assessment of the patient's condition, ... (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, (5) whether the injury would have occurred if the patient had not sought treatment, and (6) whether the tort alleged was intentional.
In Campbell v. Nexion Health at Claiborne, Inc. , 49,150 (La. App. 2 Cir. 10/1/14), 149 So.3d 436, this court stated:
A "tort" is defined as "any breach of duty or any negligent act or omission proximately causing injury or damage to another." La. R.S. 40:1299.41(A)(22). Richard v. Louisiana Extended Care Centers, Inc. , 02-0978 (La. 1/14/03), 835 So.2d 460.
While acts of malpractice can occur in the rendering of professional services, the patient must be in the process of receiving "health care" when the negligent rendition of professional services occurs. Richard , supra .... Nursing home residents present a special case, as the resident is not always receiving medical care or treatment, but is always confined to the facility. Not all negligent acts by a nursing home constitute medical malpractice. Richard , supra .
As the LMMA serves to limit the rights of tort victims, its coverage should be strictly construed. Richard, supra .
* * *
In Eldridge v. Heritage Manor, L.L.C. , 06-718 (La. App. 3 Cir. 11/2/06), 942 So.2d 743, the plaintiffs denoted their claims as negligence, breach of contract for services to be provided, breach of duties and violations of rights. The patient was described as "totally disabled due to a stroke." Specific allegations included, among others, that the defendant failed to properly care for and treat their patient; failed to implement an adequate care plan to meet their patient's needs; failed to provide adequate number of trained nursing staff; failed to properly monitor and respond to changes in the patient's condition, provide that information and change of status to the family and physician; failed to obtain and provide therapy and assistance devices and safety; and failed to adhere to quality care standards and allocate proper funding for care and services to meet the needs of their patients. The plaintiffs argued that some claims were purely custodial and, therefore, outside of the LMMA. The Eldridge court found that the claims fell under care, treatment and assessment so as to require presentation to a medical review panel. It was noted that expert medical testimony would be needed to determine if the standard of care was breached with respect to care and treatment, as the actions involve treatment modalities and the need therefor. Finally, the actions *746 involved the assessment, or lack thereof, of the resident's condition.
Regarding whether Ms. Edwards' action was an intentional act as envisioned by the LMMA, we note that in White v. Glen Retirement Sys. , 50,508 (La. App. 2 Cir. 4/27/16), 195 So.3d 485, this court stated:
Regarding intentional torts, the meaning of intent is that the person who acts either 1) consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct; or 2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Act is distinguished from intent in that the word act is used to denote an external manifestation of the actor's will which produces consequences. That act must proceed from volition of the actor. 1 William E. Crawford, Tort Law, § 12:4 in 12 Louisiana Civil Law Treatise (2d ed. 2009). For example, terms such as "should have known" may raise issues of negligence or gross negligence, but do not amount to "intentional" as that term is used in the Worker's Compensation Act. Id., citing Adams v. Time Saver Stores, Inc. , 615 So.2d 460 (La.App. 4th Cir.1993), writ denied , 617 So.2d 910 (La.1993).
Heritage Manor argues that Louisiana appellate courts have consistently held that changing a diaper is not medical treatment and cites Henry v. W. Monroe Guest House, Inc. , 39,442 (La. App. 2 Cir. 3/2/05), 895 So.2d 680, and Womack v. Autumn Leaves Nursing & Rehab. Ctr., L.L.C. , 39,710 (La. App. 2 Cir. 5/11/05), 902 So.2d 1280. Those cases can be distinguished from the case at bar.
In Henry , supra, plaintiffs argued that their cause of action arose out of the nursing home's failure to check and change Ms. Henry's adult diaper in a timely manner, causing her a loss of personal dignity. The court specifically noted that although the defendants urged that the case was about decubitus ulcers, it accepted the plaintiffs' allegations and noted that plaintiffs presented a separate request for a medical review panel to discuss all malpractice aspects of Ms. Henry's case. Therefore, the appeal only addressed plaintiffs' dignity claims. The court stated as follows:
First, we find that changing a diaper is not medical treatment. Many non-medical persons have done it without difficulty or specialized medical training. Second, no medical expert is needed to determine whether a diaper is in need of a changing. Again, we are not discussing causation of decubitus ulcers, but instead, the personal dignity of a nursing home resident. Third, a medical assessment of the resident's condition was not necessary as Ms. Henry's care plan called for a diaper change every two hours, or as needed. This court has previously held that complaints are not treatment related when the failure of the nursing home arises from a failure to abide by the patient care plan ... Fourth, changing a diaper is something routinely performed by nurses aides, and not under the direction of a physician. Fifth, Ms. Henry would have suffered a loss of dignity for having dirty diapers, regardless of her residence in the nursing home. Sixth, this factor is not applicable in this case. Under this analysis, we find that plaintiff's complaints fall under the NHRBR [Nursing Home Residents Bill of Rights], and not the MMA.
Heritage Manor admits that the claim in Henry , supra , was that the patient suffered a loss of dignity by the failure of the nursing home to change dirty diapers, but argues that the analysis is the same and is *747 still applicable to the question of whether changing a diaper is related to medical treatment such that an intentional punch to the face can even be said to have occurred during treatment. Womack , supra , presented the same issues as those in Henry , supra , i.e., that the dignity of the person whose diaper was not changed was at issue, and that issue was not related to health care. Thus, this court held in those two cases that claims of abuse and negligence were not medical treatment related and fell under the NHRBR rather than the LMMA.
The facts of this case can be distinguished from those in Henry , supra , and Womack , supra . In Henry, the court specifically stated that the aspects of the diaper change issue which could fall under the LMMA had been referred to the medical review panel and that only that portion of the case dealing with patient dignity was being addressed at that time. Applying the factors found in Coleman , supra , in the case at bar, the particular wrong, i.e., injury during the changing of a diaper which was necessary to prevent ulcers in a paralyzed patient, was medical treatment related and/or caused by a dereliction of professional skill. Expert medical evidence was necessary to determine whether the appropriate standard of care was breached as a result of the failure to safely change the patient's diaper when the point of changing him was to prevent decubitus ulcers. The pertinent act or omission involved assessment of the patient's condition. The incident occurred within the scope of activities which the nursing home and Ms. Edwards were licensed to perform. Ms. Edwards' act in striking Plaintiff does not meet the definition of an intentional act under White , supra , since she did not intend the consequences of her act, but, instead, simply reacted to the sudden action of Plaintiff resisting the care she was giving him. It was more in the nature of gross negligence rather than an intentional act and, thus, is susceptible to a claim for medical malpractice.
The facts of the case at bar lead us to conclude that the order to keep Plaintiff clean and dry was related to his health care and necessary, specifically, to his recovery. Plaintiff had a stroke which left him paralyzed on his left side, incontinent and subject to developing decubitus ulcers. Had Heritage Manor's employee not followed Dr. Hernandez's orders and Plaintiff had developed the ulcers as a result of the employee's failure to perform her duty, certainly that would have resulted in a medical malpractice claim under the LMMA. The fact that the employee was attempting to perform her duty and render medical care pursuant to a treatment plan when she reacted badly to being struck by a patient brings that act under the protection of the LMMA.
For the foregoing reasons, the assignments of error related to designation of the action as an intentional tort and the determination of coverage of that action under the LMMA are found to have merit. We find that the action of Ms. Edwards is subject to review by the medical review panel and qualifies as medical malpractice in the definition found in the LMMA.
Prescription
Plaintiff argues that in a malpractice case, the complaint or petition filed with the PCF is the pleading that determines whether the claim is prescribed on its face. The petition filed in the district court after a medical review panel process is not the pleading that determines the burden of proof. He asserts that his petition was timely filed because, under the LMMA, specifically La. R.S. 40:1231.8,[2] *748 prescription is suspended by the filing of the request for review of the claim and that he had until 90 days after the rendering of the medical review panel's decision to file suit against Heritage Manor. The medical review panel's supplemental opinion was rendered on November 3, 2014, finding that Ms. Edwards was Heritage Manor's employee when the conduct occurred, and her conduct failed to comply with the appropriate standard of care. He filed his suit on December 2, 2014, within the time period allowed by law under the LMMA.
La. R.S. 9:5628(A) concerns the prescriptive period for medical malpractice claims and states in pertinent part as follows:
No action for damages for injury or death against any physician, ... hospital or nursing home duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
La. R.S. 40:1231.8(A)(2)(a) provides for suspension of the prescriptive period in a medical malpractice action and states, in part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
In Wells v. Zadeck , 11-1232 (La. 3/30/12), 89 So.3d 1145, the court stated that the rules of prescription are designed to prevent old and stale claims from being prosecuted. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. , citing Campo v. Correa , 01-2707 (La. 6/21/02), 828 So.2d 502. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Campo , supra . In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations contained therein are accepted as true. Evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931.
In LeBreton v. Rabito , 97-2221 (La. 7/8/98), 714 So.2d 1226, the court stated that the filing of a medical malpractice claim with a medical review panel triggers the suspension of prescription specially provided by the LMMA, rather than the *749 interruption of the liberative prescriptive period generally provided for in the Louisiana Civil Code.
By virtue of La. R.S. 40:1231.8(A)(2)(a), the filing of a request for review of a claim "shall suspend the running of prescription against all joint and solidary obligors ... to the same extent that prescription is suspended against the party or parties that are the subject of the request for review." This sentence indicates that prescription is suspended as to all claims against the party that are the subject of the request for review. In the case at bar, Plaintiff's suit details all causes of action against Heritage Manor and was filed within 90 days of the issuance of the opinion of the medical review panel and, therefore, was timely.
Accordingly, this assignment of error has merit.
Admissibility of the DHH Survey/Investigation Report
Plaintiff argues that the trial court committed legal error in not allowing the DHH report to which RN Furguson was to testify at the hearing on the exception of prescription to be admitted into evidence. Instead, the trial court allowed him to proffer the report.
Heritage Manor claims that the trial court properly refused to admit the DHH report into evidence because such admission is discretionary and the proper foundation must be laid prior to any report's admission.
Based on the foregoing discussion concerning the exception of prescription, which was the basis for the appeal in this matter, we pretermit discussion of the trial court's ruling allowing the proffer of the DHH report. That issue has no bearing on the issue of prescription, and the parties have an adequate remedy by review on appeal of the final judgment on the merits.
This assignment of error is without merit.
CONCLUSION
Based on the foregoing, the judgment of the trial court sustaining the exception of prescription in favor of Defendant Heritage Manor Stratmore Nursing & Rehabilitation Center, L.L.C., and against Plaintiff John Mack Evans, Sr., and dismissing all claims, is hereby reversed, and judgment is entered denying the exception. The matter is remanded for further proceedings consistent with this decision. Costs of appeal are assessed to Defendant Heritage Manor Stratmore Nursing & Rehabilitation Center, L.L.C.
REVERSED AND REMANDED.

Although the style of Plaintiff's petition names Defendant and "et al.," it is unclear from the record who else is named as a defendant. The petition names only the Heritage Manor facility as a defendant.

Formerly cited as La. R.S. 40:1299.47(A)(2)(a) prior to August 1, 2016.