Judgment rendered April 5, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,958-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JILL WENDLING,                                    Plaintiff-Appellant
INDIVIDUALLY and on behalf of
her deceased Husband, HAROLD
AVERY WENDLING

versus

RIVERVIEW CARE CENTER,                      Defendants-Appellees
LLC dba RIVERVIEW CARE
CENTER, DAVID BAILEY AND
SUSAN NUGENT

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 633,833

Honorable Craig Owen Marcotte, Judge

* * * * *

JOHN CHARLES MILKOVICH                      Counsel for Appellant


LUNN IRION LAW FIRM, LLC                     Counsel for Appellees
By: Penny Nowell


* * * * *

Before COX, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

The widow of a nursing home resident filed suit against the nursing home and its supervisors after the resident died from sepsis allegedly caused by decubitus wounds formed when the incontinent resident was often allowed to remain in his own waste due to negligent diapering. The lawsuit alleged medical malpractice claims as well as dignity-type claims related to the negligent diapering. The widow had earlier requested the formation of a Medical Review Panel ("MRP").

The nursing home filed the exception of prematurity arguing that all of the claims sounded in medical malpractice or were inextricably interwoven with the medical malpractice claims. The trial court granted the exception. Concluding that the dignity-type claims fall outside the reach of the Louisiana Medical Malpractice Act ("LMMA"), we reverse the judgment in part.

## FACTS

Harold Wendling ("Harold") was a resident at Riverview Care Center ("Riverview") in Bossier City from January 17, 2020, until November 23, 2020. He died the day after his discharge from Riverview from sepsis that was allegedly caused by decubitus wounds.

Harold's widow, Jill Wendling ("Wendling"), filed a request for the formation of a MRP with the Division of Administration on October 21, 2021. Named as defendants were Riverview, David Bailey (Riverview's Director and/or Administrator), and Susan Nugent (Assistant Director of Nursing and a wound care nurse at Riverview).

On November 19, 2021, Wendling, individually and on behalf of her late husband, filed suit against Riverview, Bailey, Nugent, and Rose Chepkoech (Director of Nursing at Riverview). Wendling alleged that the acts and omissions by Riverview's employees constituted a breach of the standard of appropriate care, tortious conduct, negligent acts, negligent omissions, and intentional and negligent infliction of mental distress. She maintained that despite Harold's requests to be changed, he remained in his own waste for extended periods of time. More specifically, she alleged that Riverview was delinquent, inadequate, and incompetent in failing to timely clean Harold after bladder and bowel incontinence, change his diapers, and monitor and treat his skin condition and wounds, and that these failures on a continuous and persistent basis led to severe decubitus wounds and his death. She also alleged that diapers were effectively rationed at Riverview because they were kept under lock and key.

Regarding the treatment of Harold's wounds, Wendling alleged that Riverview was notified in November of 2020 that Harold had severe and open decubitus wounds on his buttocks, yet Riverview did not obtain prompt medical attention for him.

Wendling maintained that the negligent acts and omissions of the defendants caused Harold to experience pain and suffering, emotional anguish, mental distress, humiliation, embarrassment, indignity, a breakdown in his skin condition, decubitus wounds, degradation of his overall health, infection, sepsis, and death. She alleged that all the defendants failed to exercise the standard of care required of every health

2

care provider under similar circumstances when rendering professional services to Harold. She also asserted a loss of consortium claim.

Wendling contended that Bailey and Chepkoech exercised authority, control, and power over staffing, provision of care, and employee conduct at Riverview. She also contended that Nugent exercised some authority, control, and power over those functions.

Riverview, Bailey, and Nugent filed the exceptions of prematurity, *lis pendens*, and improper venue.[1] Regarding the exception of prematurity, they argued that Riverview was a qualified health care provider and entitled to have the allegations made against them reviewed by the MRP, which was not set to expire until October 14, 2022. They further argued that as Riverview employees, Bailey and Nugent were entitled to the same protections.

Wendling argued in opposition to the exception of prematurity that it should be denied as to the claims of rationing diapers, locking diaper storage units, failing to timely clean and diaper Harold, forcing him to lie in his own waste for extended periods of time, and chronically understaffing the facility, as those claims may also sound in tort.

Davalisia Solomon testified on behalf of Wendling at the hearing on the exceptions. Solomon had been a certified nursing assistant at Riverview when Harold was there until she was later terminated. She testified that Riverview had a diaper rationing system in effect, and the room where the diapers were stored was locked. She believed diapers were rationed to save

---

[1] Regarding the exception of *lis pendens*, the exceptors contended that an identical suit had been filed in Bossier Parish on November 19, 2021, against Riverview, Bailey, Chepkoech, and Nugent.

3

money, and as a result of the rationing system, they were continuously short of diapers. She and the other staff members would have to get permission from supervisors including Nugent and Chepkoech to gain access to the room where the diapers were stored, and they would have to return the key immediately after obtaining the diapers.

Solomon testified that the door remained locked but the key was not left when Chepkoech and Nugent would leave the nursing home. If diapers became scarce when Chepkoech and Nugent were not there, the employees would try to reach them by phone, but were not always successful. Solomon testified that sometimes she and other staff members would have to use bed sheets or blankets as diapers, and that her supervisors were aware of this.

The trial court rendered judgment sustaining the exception of prematurity. Wendling's lawsuit was dismissed without prejudice. The exceptions of *lis pendens* and improper venue were denied. Wendling has appealed.

## DISCUSSION

Wendling notes that she is appealing the judgment to the extent it dismissed as premature the claims for Riverview's neglect of the diapering, changing, and hygiene of Harold, who she maintains was immobile and incontinent.

Wendling frames the issue before this Court as being whether claims for negligent diapering are strictly confined to the provisions of the LMMA or may be brought in an action for breach of contract and/or a claim for damages under La. C.C. art. 2315. She maintains that failing to change a nursing home resident's diaper for long periods of time is an act which falls

4

outside the provisions of the LMMA and does not require submission to a MRP. She asserted in her petition that Riverview consistently and continuously failed to timely change Harold's diaper and bed linens, failed to timely clean him after episodes of incontinence, forced him to lie in his own waste for hours, rationed diapers, and kept diapers under lock and key.

Riverview counters that the allegations in Wendling's petition fall squarely within the scope of claims governed by the provisions of the LMMA.

La. R.S. 40:1231.8(B)(1)(a)(i) states that "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel[.]"

Under the LMMA, a medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. *Dupuy v. NMC Operating Co., L.L.C.*, 15-1754 (La. 3/15/16), 187 So. 3d 436. In such situations, a defendant's exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action; instead, the defendant contends that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Id*.

The burden of proving prematurity is on the moving party, which in a medical malpractice case, must show that it is entitled to a MRP because the allegations fall within the scope of the LMMA. *Kelleher v. University*

*Medical Center Management Corp.*, 21-00011 (La. 10/10/21), 332 So. 3d 654.

Where no evidence is presented at the trial of a dilatory exception, such as prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008 (La. 9/5/07), 966 So. 2d 519. On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 930.

Because the question of whether a claim sounds in medical malpractice is a question of law, appellate review of the trial court's grant of the dilatory exception of prematurity is *de novo*. *Jackson v. Willis-Knighton Health System*, 54,405 (La. App. 2 Cir. 4/13/22), 337 So. 3d 625.

Malpractice is defined in La. R.S. 40:1231.1(A)(13), in relevant part, as:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions . . . in the training or supervision of health care providers . . . .

Health care is defined as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement[.]" La. R.S. 40:1231.1(A)(9). The LMMA also provides a definition of a tort as being "any breach of duty or any negligent

6

act or omission proximately causing injury or damage to another." La. R.S. 40:1231.1(A)(22).

As explained by the Louisiana Supreme Court in *Sewell v. Doctors Hosp.*, 600 So. 2d 577, 578 (La. 1992):

> The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of the health care provider to the patient is not subject to these limitations.

In *Porter v. Southern Oaks Nursing & Rehabilitation Center, LLC*, 49,807, p. 7 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1197, 1201, *writ denied*, 15-1228 (La. 9/25/15), 182 So. 3d 935, this Court noted that "[t]he courts have steadfastly held that MMA and its limitations on tort liability for qualified healthcare providers apply only to claims arising from medical malpractice, and that all other tort liability on the part of a qualified healthcare provider is governed by general tort law."

Not all negligent acts by a nursing home will constitute medical malpractice under the LMMA. *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978 (La. 1/14/03), 835 So. 2d 460. To constitute a medical malpractice claim, the alleged negligent act must be related to the nursing home resident's medical treatment at the nursing home under the requirements of Louisiana law. *Id*.

Nursing home residents present a special case, as the resident is not always receiving medical care or treatment, but is always confined to the facility. *Campbell v. Nexion Health at Claiborne, Inc.*, 49,150 (La. App. 2 Cir. 10/1/14), 149 So. 3d 436.

In *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So. 2d 303, the Louisiana Supreme Court announced six factors to consider in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA: (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.

La. R.S. 40:2010.8 sets forth what is known as the Nursing Home Residents' Bill of Rights ("NHRBR"). Among those rights is the right to be treated "courteously, fairly, and with the fullest measure of dignity[.]" La. R.S. 40:2010.8(A)(9). Prior to its amendment in 2003, La. R.S. 40:2010.9, the civil enforcement provision of the NHRBR, stated, in relevant part and with emphasis added:

> A. Any resident whose rights, as specified in R.S. 40:2010.8, are deprived or infringed upon shall have a cause of action against any nursing home or health care facility responsible for the violation. The action may be brought by the resident or his curator, including a curator ad hoc. The action may be brought in any court of competent jurisdiction to enforce such rights and to *recover actual damages* for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action shall be entitled to recover reasonable attorney's fees, costs of the action, and *damages*, unless the court finds that the losing plaintiff has acted in bad faith with malicious purpose, and that there was an absence of a justiciable issue of either law or fact, in which case the court shall award the prevailing party his reasonable attorney fees.

8

B. The remedies provided in this action are in addition to and cumulative with other legal and administrative remedies available to a resident and to the Department of Health and Hospitals or other governmental agencies.

Following the amendment, a resident whose rights may have been deprived or infringed upon can seek injunctive relief, but any recovery is limited to attorney fees and costs. Actual damages can no longer be recovered under the NHRBR.

In arguing that she was not required to submit negligent diapering claims to a MRP, Wendling relies heavily on this Court's opinion in *Henry v. West Monroe Guest House, Inc.*, 39,442 (La. App. 2 Cir. 3/2/05), 895 So. 2d 680. She maintains that *Henry* specifically found that changing a diaper is not medical treatment, and that it recognized the distinction between the failure to change diapers causing decubitus ulcers and the failure to change diapers lessening a patient's dignity.

A lawsuit was filed in *Henry* seeking damages for violations of the rights of a nursing home resident who had died prior to the amendment to the NHRBR. The petition alleged that the resident was left to lie in her own urine and feces until it dried to her body, which led to physical and emotional injuries including dehydration, malnutrition, contractures, bed sores, and death. It was further alleged that the lack of care caused the resident to lose her personal dignity. The plaintiffs had initiated a separate proceeding for the formation of a MRP.

The nursing home in *Henry* filed the exception of prematurity on the grounds that the cause of action was one of medical malpractice. The plaintiffs contended that some of their claims arose from violations of the

9

resident's rights under the NHRBR and did not sound in medical malpractice. Those claims were that her rights were violated when she was allowed to lie in her own waste for extended periods of time. The plaintiffs conceded that their other claims were for medical malpractice.

Before considering the *Coleman* factors, this Court in *Henry* noted the appeal only addressed the dignity claims. This Court then analyzed the factors:

> First, we find that changing a diaper is not medical treatment. Many non-medical persons have done it without difficulty or specialized medical training. Second, no medical expert is needed to determine whether a diaper is in need of a changing. Again, we are not discussing causation of decubitus ulcers, but instead, the personal dignity of a nursing home resident. Third, a medical assessment of the resident's condition was not necessary as Ms. Henry's care plan called for a diaper change every two hours, or as needed. This court has previously held that complaints are not treatment related when the failure of the nursing home arises from a failure to abide by the patient care plan. *See Terry v. Red River Center Corporation*, 37,991 (La. App. 2d Cir. 12/10/03), 862 So. 2d 1061, *writ denied*, 04-0094 (La. 03/19/04), 869 So. 2d 856. Similarly, the Fifth Circuit has found that failure to abide by a care plan is not a medical assessment. *See Jordan v. Stonebridge, L.L.C.*, 03-588 (La. App. 5th Cir. 11/25/03), 862 So. 2d 181, *writ denied*, 03-3520 (La. 03/19/04), 869 So. 2d 851. Fourth, changing a diaper is something routinely performed by nurses aides, and not under the direction of a physician. Fifth, Ms. Henry would have suffered a loss of dignity for having dirty diapers, regardless of her residence in the nursing home. Sixth, this factor is not applicable in this case. Under this analysis, we find that plaintiffs' complaints fall under the NHRBR, and not the MMA.

*Id.* at 4-5, 895 So. 2d at 683.

This Court in *Henry* also rejected the notion that the LMMA is the exclusive remedy when any portion of the cause of action falls under the LMMA. It found that the plaintiffs could maintain a LMMA claim and a NHRBR claim "separately and simultaneously." *Id.* at 6, 895 So. 2d at 684.

10

The causation of the decubitus ulcers was part of the malpractice claim and was separate from the loss of dignity action which arose from the resident having to lie in her own waste for extended periods of time. Accordingly, the judgment granting the exception of prematurity was reversed in part, and the plaintiffs in *Henry* were allowed to proceed with their NHRBR claim. This Court added that any claims regarding causation of physical trauma, dehydration, malnutrition, contractures, decubitus ulcers, and death were to be placed before the MRP.

In *Furlow v. Woodlawn Manor, Inc.*, 39,485 (La. App. 2 Cir. 4/20/05), 900 So. 2d 336, *writ denied*, 05-1320 (La. 12/9/05), 916 So. 2d 1064, the plaintiff's late mother, who had been a double amputee confined to a wheelchair, was a resident at Woodlawn through July of 2003. Furlow filed suit against Woodlawn seeking damages for injuries to her mother while there. She complained that the nursing home allowed her mother to lie for hours in soiled bed linens, did not turn her to prevent pressure sores, and allowed her to suffer falls. Furlow also filed a request for the formation of a MRP. Woodlawn raised the exception of prematurity, arguing that the allegations in the petition concerned medical malpractice. The trial court granted the exception. After applying the *Coleman* factors, this Court concluded that the allegations the nursing home had not properly kept the resident clean were not covered under the LMMA. This Court reversed the judgment granting the prematurity exception in part, on the issue of whether the nursing home had violated the NHRBR by not keeping Furlow's mother clean of her own waste.

11

Applying the *Coleman* factors to the allegations at hand, we conclude that Wendling's negligent diapering claim falls outside the scope of the LMMA. First, determining when to change diapers for an incontinent and immobile nursing home resident and then actually changing them is not medical treatment. It does not require specialized training. Second, expert medical evidence is not needed to determine whether the standard of care was breached when a patient is repeatedly allowed to lie in his own waste. Third, an assessment of a resident's condition is not necessary to determine that a resident who has soiled himself needs to have his diaper changed. Fourth, changing a soiled diaper is part of the nursing home's custodial care and is not normally performed under the supervision of a physician. Fifth, the resident would have suffered a loss of dignity from remaining in dirty diapers even if not at the nursing home. Sixth, although Wendling maintains that Riverview intentionally rationed diapers and prolonged how long Harold remained in his own waste, this factor is inapplicable.

Riverview contends that application of the *Coleman* factors shows that Wendling's claims fall within the scope of the LMMA, making the suit premature. Riverview cites *Evans v. Heritage Manor Stratmore Nursing & Rehabilitation Center, L.L.C.*, 51,651 (La. App. 2 Cir. 9/27/17), 244 So. 3d 737, *writ denied*, 17-1826 (La. 12/15/17), 231 So. 3d 639, in support of its argument that courts have moved away from the holdings of pre-amendment NHRBR cases related to diapering. Riverview urges that this Court has adopted the position that incontinent care is a part of medical or professional care in a nursing home setting.

Evans, a bedridden stroke patient at a skilled nursing rehabilitation facility, was struck in the face by a CNA who was attempting to change his wet diaper and t-shirt while he resisted and struck her. Evans' physician had given standing orders to turn him often and to keep him clean and dry in order to prevent the development of skin ulcers, pressure sores, and other complications. Evans filed a request for a MRP. At the conclusion of the MRP, he filed suit against the facility alleging that he was entitled to damages under the LMMA and for breaches of fiduciary duty, failure to provide contracted care, and failure to provide sufficient staff training concerning the protections due patients under the NHRBR. Heritage Manor filed an exception of prescription in which it argued that Evans' claims arising from the battery did not arise from medical treatment and were not malpractice claims, and that the filing of the request for the MRP did not interrupt or suspend prescription on the non-malpractice claims. The trial court sustained the exception, finding that the claim had prescribed because the CNA's action was an intentional tort and not medical malpractice.

This Court disagreed with the trial court and found that the CNA's action qualified as medical malpractice as defined in the LMMA. In reaching this conclusion, this Court pointed out that *Henry* could be distinguished as it involved issues concerning only dignity claims. Next, this Court applied the *Coleman* factors:

> Applying the factors found in *Coleman*, *supra*, in the case at bar, the particular wrong, i.e., injury during the changing of a diaper which was necessary to prevent ulcers in a paralyzed patient, was medical treatment related and/or caused by a dereliction of professional skill. Expert medical evidence was necessary to determine whether the appropriate standard of care was breached as a result of the failure to safely change the patient's diaper when the point of changing him was to prevent

13

decubitus ulcers. The pertinent act or omission involved assessment of the patient's condition. The incident occurred within the scope of activities which the nursing home and Ms. Edwards were licensed to perform. Ms. Edwards' act in striking Plaintiff does not meet the definition of an intentional act under *White*, *supra*, since she did not intend the consequences of her act, but, instead, simply reacted to the sudden action of Plaintiff resisting the care she was giving him. It was more in the nature of gross negligence rather than an intentional act and, thus, is susceptible to a claim for medical malpractice.

*Id.* at 16, 244 So. 3d at 747. This Court also reasoned that the physician's order to keep Evans clean and dry was related to his health care and necessary to his recovery. Finally, this Court noted that the fact that the CNA was attempting to perform her duty and render medical care pursuant to a treatment plan when she reacted poorly to being struck by Evans brought that act under the protection of the LMMA.

*Evans* can be distinguished from the matter at hand as it did not involve a negligent diapering claim where the resident suffered a loss of dignity from the nursing home's failure to change his diapers timely. Rather, his cause of action arose from a battery which occurred during a diaper change. This Court in *Evans* specifically distinguished *Henry* and similar cases where the dignity of the person whose diaper was not changed was at issue.

Riverview further argues that there are no cases which allow for the recovery of damages for negligent incontinent care under La. C.C. art. 2315 for incidents occurring after August 15, 2003, the effective date of the amendment to the enforcement provision of the NHRBR. Riverview maintains that the amendment to the NHRBR would have no effect if "dignity" claims were still allowed under Louisiana law. According to

Riverview, allegations concerning incontinence care become actionable only when they cause injuries such as wounds.

La. R.S. 40:2010.9(B) states that "[t]he remedies provided in this Section shall not be construed to restrict other legal and administrative remedies available to a resident and to the Louisiana Department of Health or other governmental agencies."

Earlier cases from this Court have not addressed whether there is a viable claim outside of the NHRBR following the 2003 amendment. In *Burks v. Christus Health Monroe*, 39,540 (La. App. 2 Cir. 4/6/05), 899 So. 2d 775, *writ denied*, 05-1184 (La. 11/28/05), 916 So. 2d 146, a nursing home resident was allegedly left to lie in her own urine and waste for hours at a time while at the nursing home between March 2003 and December 2003. The petition sought damages under the NHRBR for conduct occurring before August 15, 2003, and under a general negligence theory for conduct afterwards. This Court reversed in part the judgment granting the exception of prematurity on the issue of whether the nursing home violated the NHRBR. This Court stated that it did not need to resolve the question of whether the 2003 amendment to La. R.S. 40:2010.9 impacted the viability of a plaintiff's claim for damages under a general negligence theory for conduct occurring on or after August 15, 2003.

More recently, in *Butler-Bowie v. Olive Branch Senior Care Center*, 52,520 (La. App. 2 Cir. 2/27/19), 266 So. 3d 478, a lawsuit was brought alleging that an elderly man had died from complications related to substandard medical treatment and care that he received while a live-in resident at the defendant facility. The plaintiff asserted that several of her

15

allegations fell outside of the LMMA's definition of health care. Those allegations were inadequate custodial care, failure to protect from injury, leaving the patient unattended, failure to provide adequate care and nutrition, and failure to properly turn and move the patient. Affirming the judgment sustaining the exception of no cause of action, this Court concluded after analyzing the petition under the *Coleman* factors that all of the plaintiff's allegations fell under the LMMA. This Court also stated that there is no longer a cause of action for damages under the NHRBR. We note that while there was an allegation of inadequate custodial care in *Butler*, there was no specific allegation of negligent diapering.

In *Quinney v. Summit of Alexandria*, 2005-237 (La. App. 3 Cir. 6/1/05), 903 So. 2d 1226, a nursing home resident was bed-bound, unable to move himself, and incontinent of bladder and of bowel. His son sued the nursing home alleging that his father was not repositioned enough to prevent pressure sores, was given insufficient fluids and food, and was not cleaned after each incontinent episode to prevent waste contact with his skin for an extended time. In an amended petition against the nursing home and its owner/operator, the son alleged violations of the NHRBR, as well as asserted a negligence claim for inadequate custodial care after August 15, 2003. In particular, the plaintiff alleged in the amended petition that his father's personal dignity was violated when he was left to lie in his own urine and waste for extended periods of time. The plaintiff maintained that no medical malpractice claim was asserted in the amended petition. The trial court granted the defendants' exception of prematurity regarding claims against the nursing home for conduct which occurred after the home became

16

a qualified health care provider on November 29, 2003.[2]  The appellate court reversed the ruling on the exception regarding the non-malpractice claims which occurred on or after November 29.

In his appellate brief, the plaintiff in *Quinney* maintained that the appeal did not concern separate malpractice claims,[3] but only violations of his father's rights under the NHRBR.  He asserted that it was not medical malpractice but a violation of rights under the NHRBR when his father was left to lie in his own waste.  The nursing home countered that the claim was either a medical malpractice claim in its own right or was inextricably interwoven into the medical malpractice claim.

The *Quinney* court noted that the claim in *Henry* was nearly identical to the claim before it, and that the *Henry* court concluded that the plaintiffs could maintain their LMMA claim and their NHRBR claim separately and simultaneously.  After applying the *Coleman* factors, the appellate court concluded that the allegations that the nursing home failed to keep the resident and his bed linens clean and free of his waste did not constitute a malpractice claim under the LMMA.  The plaintiff was allowed to pursue his LMMA claim separately from and simultaneously with his other claims including alleged violations of the NHRBR.

In *Randall v. Concordia Nursing Home*, 2007-101 (La. App. 3 Cir. 8/22/07), 965 So. 2d 559, *writ denied*, 07-2153 (La. 1/7/08), 973 So. 2d 726, the plaintiff was awarded damages by a jury for the loss of his mother's dignity while she was a nursing home resident prior to the amendment to La.

_____

[2] The owner/operator of the nursing home was not a qualified health care provider.

[3] The plaintiff had filed a request for a MRP.

17

R.S. 40:2010.9. The plaintiff had earlier voluntarily dismissed his medical malpractice action against the nursing home. On appeal, the nursing home contended the trial court erred in denying its exception of no right of action. The nursing home argued that the plaintiff had no right of action because the negligence alleged in his petition was related to medical treatment and should be considered part of his medical malpractice claim that was dismissed. The *Randall* court noted that the plaintiff had asserted claims on his mother's behalf that she had suffered damages from being left to lie for hours in her own waste, as well as for loss of dignity caused by inadequate staffing levels at the nursing home. After examining the *Coleman* factors, the *Randall* court concluded that allegations that the nursing home allowed the plaintiff's mother to lie in her own waste or failed to change her linens did not sound in medical malpractice. The court further stated:

> Moreover, it is clear from the current version of La. R.S. 40:2010.9(B) that causes of action for money damages based upon other legal remedies, for example those based upon La. C.C. art. 2315, are not barred. . . . Given that the plaintiff's petition asserted a survival action and wrongful death action based upon La. C.C. art. 2315, and the plaintiff is a surviving child of the decedent, Mrs. Randall, we find no merit in the assertion that this plaintiff had no right of action against Camelot.

*Id*. at 11, 965 So. 2d at 568.

In *Davis v. St. Francisville Country Manor, LLC*, 2005-0072 (La. App. 1 Cir. 2/10/06), 928 So. 2d 549, *writ denied*, 06-0604 (La. 5/26/06), 930 So. 2d 25, the First Circuit concluded that Davis had asserted claims under the NHRBR and La. C.C. art. 2315 for alleged negligence by a nursing home in failing to properly clean Allen, her late mother, of her own

18

waste in a routine and timely manner. Accordingly, Davis was not required to submit those claims to a MRP.

Davis filed a request for the formation of a MRP, then sued for damages suffered by Allen while a resident at the nursing home from April of 2003 until December of 2003. She not only alleged that the nursing home was negligent in leaving Allen to lie in her own waste for extended periods of time, but she also alleged that Allen had suffered pressure sores because of inadequate positioning and turning. She further alleged that the nursing home failed to sufficiently feed Allen or ensure that she received adequate fluids, failed to provide sufficient staff to ensure that her custodial care needs were met, and failed to treat her mother with the fullest measure of dignity.

The nursing home filed the exceptions of prematurity and no cause of action. Davis argued the alleged negligence was not medical treatment and fell under the NHRBR instead of the LMMA, and that the 2003 amendment to La. R.S. 40:2010.9 eliminating the recovery of damages was not applied retroactively. Regarding the claim for damages suffered after the effective date of the amendment to La. R.S. 40:2010.9, Davis argued that claim was for damages caused by the nursing home's negligence rather than medical malpractice, and she was entitled to assert that claim under La. C.C. art. 2315. The trial court granted the exception of no cause of action in part, finding that Davis had failed to state a claim for money damages under La. R.S. 40:2010.9 because the 2003 amendment applied retroactively. The trial court also granted the exception of prematurity.

The *Davis* court first addressed the exception of no cause of action. It concluded that the 2003 amendment to the NHRBR was not applied retroactively. Regarding the negligence claims which occurred after the effective date of the amendment, the *Davis* court concluded that Davis was entitled to pursue damages for such negligence under general principles of tort law. The portion of the judgment maintaining the exception of no cause of action was reversed to the extent that it denied her claim for violations of the NHRBR prior to August 15, 2003.

The *Davis* court then considered the issue of whether the claims for damages based upon alleged negligence and violations of the NHRBR were actually based upon medical malpractice and subject to the LMMA. Although other negligent acts were alleged in her petition, Davis limited her argument on appeal to be that the failure of the nursing home to clean her mother on a regular basis caused her to lie in her own waste for extended periods of time. After applying the *Coleman factors*, the First Circuit concluded that the trial court erred in finding that the nursing home's alleged failure to timely clean and change her mother on a regular basis was medical malpractice. Those claims of alleged negligence fell under the NHRBR and La. C.C. art. 2315.

Based upon the rationale in *Davis* and *Randall*, we conclude that Wendling may assert a claim for dignity-type damages from negligent diapering under La. C.C. art. 2315.

Finally, Riverview contends that it is clear that Wendling's claims are not merely for "dignity" or "general tort" damages as she also brought claims related to the development of skin wounds from negligent diapering,

20

the failure to properly monitor for and treat those wounds, and the progression of the wounds to sepsis and death. According to Riverview, the "dignity" claims and the claims regarding the cleansing of skin are inextricably dependent on and interwoven with the underlying malpractice claims and alleged breaches of the standard of care related to the development of wounds, sepsis, and death.

The mere fact that the claims share a factual basis – Harold remaining in his own waste because of the alleged failure by Riverview to timely change his diapers – does not preclude Wendling from seeking recovery for dignity-type claims without first submitting them to the MRP. As noted earlier, this Court determined in *Henry* that the plaintiffs were allowed to maintain a LMMA claim and a NHRBR claim "separately and simultaneously."

**CONCLUSION**

For the foregoing reasons, the trial court erred in granting the exception of prematurity regarding the dignity-type claims. We reverse the judgment in part to allow Wendling to proceed in district court on her dignity-type claims. All remaining claims involving physical injuries, including but not limited to wounds, infections, medical treatment, sepsis, and death, are relegated to the MRP proceeding.

At Riverview's costs, the judgment is **REVERSED IN PART** and **REMANDED**.