PITMAN, J.
| iThis is a tort action brought by Plaintiffs, Mary Campbell, Jerry Campbell, Jr. and Jenny Marie Ward, respectively the surviving spouse and children of Jerry Don Campbell, against Defendant, Nexion Health at Claiborne, Inc., d/b/a Claiborne Healthcare Center (“Claiborne Healthcare”), alleging that Jerry Don Campbell died after allegedly choking on a peanut butter sandwich at Claiborne Healthcare. Defendant filed a peremptory exception of no right of action and a dilatory exception of prematurity based on Plaintiffs’ failure *438 to seek review of the claim by a medical review panel. The trial court overruled the exception of no right of action and declared the exception of prematurity moot. A writ of certiorari was granted. For the following reasons, the writ is granted in part insofar as it addresses the dilatory exception of prematurity. The trial court’s finding the exception of prematurity to be moot is hereby overruled and the exception is sustained and made peremptory. In respect to the peremptory exception of no right of action, the writ is denied. Plaintiffs belong to the class of persons having a right of action to seek redress for the death of their relative.

FACTS

In June 2013, Mr. Campbell was a stroke patient at Claiborne Healthcare who had known swallowing difficulties (dysphagia) and dementia for which he had undergone weeks of speech and dysphagia therapy. Shelley Lawson, the speech language pathologist at Claiborne Healthcare, signed a discharge summary for Mr. Campbell on May 28, 2013, which made recommendations for his care, including occasional 12supervision during meals and a diet of puree-consistency solids and thin liquids.
On June 20, 2013, Mr. Campbell retrieved a peanut butter sandwich from a sandwich cart and went to his regular table in the dining room. A nurse found him unresponsive some time later, and CPR was administered. Mr. Campbell was resuscitated and transported by ambulance to the hospital where he later died.
Plaintiffs filed a petition for wrongful death and survival, individually and on behalf of the estate of Mr. Campbell, alleging that, at all times, Mr. Campbell was under the care and custody of Defendant and that a contract had been entered into for Defendant to provide care and services to meet his needs, including supervision, monitoring and assistance for his safety. The petition also alleges that Mr. Campbell was a stroke patient who required assistance with daily care, including eating his meals. It further alleges that Mr. Campbell had known swallowing difficulties and that Defendant’s agents and employees knew or should have known that he was susceptible to injuries if his food and diet were not properly monitored. Plaintiffs claim that Mr. Campbell “was provided and allowed to eat peanut butter without proper supervision; choked and suffered injury.” Further, the petition alleges that Mr. Campbell died as a result of Defendant’s failure to provide him reasonable and safe care.[1]
| .^Plaintiffs sought damages under “negligence, breach of duty and care, and breach of contract for care and services.” They also claimed that they were entitled to *439 judgment against Defendant for deprivation or infringement of the rights of Mr. Campbell as enumerated under the Nursing Home Resident’s Bill of Rights (“NHRBR”). La. R.S. 40:2010.8 et seq.
In response, Defendant filed a peremptory exception of no right of action and a dilatory exception of prematurity. Specifically, Defendant argued that Plaintiffs’ claims were made under the NHRBR and that such causes of action are not heritable. . Therefore, Plaintiffs were not the proper persons to file a suit to enforce rights under the NHRBR, even if there was such a cause of action. In regard to the exception of prematurity, Defendant argued that Plaintiffs’ claims fall under the Louisiana Medical Malpractice Act (“LMMA”), which requires that the incident be considered by a medical review panel prior to the filing of suit. In support of its exceptions, Defendant provided pertinent portions of Mr. Campbell’s medical chart, Plaintiffs’ petition and certification of Defendant’s enrollment in the Louisiana Patient’s Compensation Fund.
Plaintiffs opposed the exceptions and argued that no claims have been asserted under the NHRBR and that the claims asserted do not fall under the LMMA, but are general negligence and breach of contract claims. Plaintiffs [4assert that Defendant owed a duty to Plaintiffs to ensure that Mr. Campbell was afforded all rights under the law. Further, Plaintiffs assert that their claims are based upon the custodial care of Mr. Campbell, and are not “treatment related” or “healthcare” as defined by the LMMA.
Following the hearing on the exceptions, the trial court concluded that “the peremptory exception of no right of action should be overruled, and therefore the dilatory exception of prematurity is moot.” No written reasons for judgment were provided, though the trial court, in a footnote, found “the plaintiffs’ claims fall outside the Medical Malpractice Act, as they are custodial in nature.”
Defendant filed a notice of intention to seek writs, and the writ application was timely filed. This court granted a writ of certiorari.

DISCUSSION

Defendant argues that the trial court erred when it stopped short of determining Plaintiffs had no cause of action under the NHRBR and in failing to dismiss all of their NHRBR allegations since they sought no relief thereunder. Defendant further contends that the trial court erred when it overruled its objection of no right of action and failed to find that rights under the NHRBR were not heritable because they were strictly personal to Mr. Campbell under the Louisiana Civil Code. Defendant also argues that the trial court erred when it denied the exception of prematurity since it did not review the entirety of Plaintiffs’ allegations and further erred when it did not properly apply to those allegations the factors articulated in Coleman v. Deno, 01-1517 (La.1/25/02), 813 So.2d 303.
|fiPlaintiffs respond that Defendant never filed an exception of no cause of action; thus, there is no ruling to be reviewed with regard to that exception and it should be stricken. With regard to the exception of no right of action, Plaintiffs argue that they have asserted no claims under the NHRBR, which now provides only injunc-tive relief. They argue that their claim is based in wrongful death and breach of contract and that the trial court correctly found they have a right of action in this case.
Plaintiffs also argue that their petition is not premature because they allege facts that do not sound in medical malpractice.
*440 Instead, the fact that Defendant left a peanut butter sandwich within reach of Mr. Campbell did not involve medical treatment, nor was it “treatment related.” They claim no expert opinion is required in this case; and, therefore, the case need not be presented to a medical review panel because it does not meet the Coleman, supra, criteria.

No Right of Action

As Plaintiffs point out, there was no exception of no cause of action filed by Defendant. Only the objection of no right of action was filed. Therefore, this court will address only the objection of no right of action.
Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681; Wagoner v. Chevron USA Inc., 45,507 (La.App.2d Cir.8/18/10), 55 So.3d 12, writ denied, 10-2773 (La.3/2/12), 83 So.3d 1032; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm’n., 94-2015 (La.11/30/94), 646 So.2d 885. An exception of no right of action is a peremptory exception, the function of which is to show | fithat, based upon facts alleged and the evidence submitted, a plaintiff has no legal right or interest in enforcing the matter asserted. La. C.C.P. art. 923; Thornton v. Carthon, 47,948 (La.App.2d Cir.5/15/13), 114 So.3d 554, writ denied, 13-1785 (La.11/1/13), 125 So.3d 435. Wagoner, supra. It asks whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted. .Louisiana Paddlewheels, supra.
The burden of proof of establishing the exception of no right of action is on the éxceptor. Thornton, supra; Wagoner, supra. An exception of no right of action presents questions of law requiring a de novo review by the appellate court. La. C.C.P. art. 927; Thornton, supra; Wagoner, supra.
Although Defendant correctly argued that the only remedy available under the NHRBR is injunctive relief, which would not be available in this case as the patient is deceased, the NHRBR is not an exclusive remedy. La. R.S. 40:2010.9 specifically provides that the NHRBR does not limit or restrict other legal remedies available. Those additional remedies include breach of contract, general negligence and medical malpractice claims. As such, a claim may fall under the NHRBR and also under general tort law. Plaintiffs’ petition asserts viable claims for breach of contract and general negligence.
Because Plaintiffs are the spouse and children of the decedent, they belong to the class of persons to which the law grants a remedy for the general tort negligence, breach of contract, wrongful death and survival claims alleged. La. C.C. arts. 2315.1 and 2315.2. As such, the trial court |7was correct in overruling of Defendant’s exception of no right of action. Therefore, this assignment of error is without merit.

Exception of Prematurity

An action may be premature if it is brought before the right to enforce the . claim sued upon has accrued. The exception of prematurity, as provided in La. C.C.P. art. 926, raises the issue of whether the judicial right of action has yet to come into existence because a prerequisite condition has not been fulfilled. Heacock v. Cook, 45,868 (La.App.2d Cir.12/29/10), 60 So.3d 624.
Under the LMMA, all medical malpractice claims against qualified health care providers must first be submitted to a medical review panel for consideration. La. R.S. 40:1299.47(A)(l)(a). A civil action may not proceed against a qualified health care provider, or its insurer, until the complaint has been presented to a medical review panel. La. R.S. 40:1299.47(B)(l)(a)(I). A qualified health *441 care provider is one who has provided proof of insurance in the amount of at least $100,000 per claim and paid the necessary surcharges. La. R.S. 40:1299.42.
The dilatory exception of prematurity is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for an opinion by a medical review panel before filing suit against the provider. Spradlin v. Acadia-St. Landry Med. Found., 98-1977 (La.2/29/00), 758 So.2d 116. The defendant must show that it is a qualified health care provider, that the | ^allegations fall within the LMMA, and that it is, therefore, entitled to a medical review panel.
The LMMA defines medical malpractice as follows:
“Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient. La. R.S. 40:1299.41(A)(13).
A “tort” is defined as “any breach of duty or any negligent act or omission proximately causing injury or damage to another.” La. R.S. 40:1299.41(A)(22). Richard v. Louisiana Extended Care Centers, Inc., 02-0978 (La.1/14/03), 835 So.2d 460.
While acts of malpractice can occur in the rendering of professional services, the patient must be in the process of receiving “health care” when the negligent rendition of professional services occurs. Richard, supra. “Health care” is defined as “any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment, or confinement [.]” La. R.S. 40:1299.41(A)(9). Nursing home residents present a special case, as the resident is not always receiving medical care or treatment, but is always confined to the facility. Not all negligent acts by a nursing home constitute medical malpractice. Richard, supra.
IsAs the LMMA serves to limit the rights of tort victims, its coverage should be strictly construed. Richard, supra. In Coleman v. Deno, supra, the supreme court set forth a six-factor test to determine whether a negligent act is covered under the LMMA. Those factors are:
(1) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient’s condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional. Coleman, supra.
In Eldridge v. Heritage Manor, L.L.C., 06-718 (La.App.3d Cir.11/2/06), 942 So.2d 743, the plaintiffs denoted their claims as *442 negligence, breach of contract for services to be provided, breach of duties and violations of-rights. The patient was described as “totally disabled due to a stroke.” Specific allegations included, among others, that the defendant failed to properly care for and treat their patient; failed to implement an adequate care plan to meet their patient’s needs; failed to provide adequate number of trained nursing staff; failed to properly monitor and respond to changes in the patient’s condition, provide that information and change of status to the family and physician; failed to obtain and provide therapy and assistance devices and safety; and failed to adhere to quality care standards and allocate proper funding for care and services to meet the needs of their patients. The plaintiffs argued that some claims were purely custodial and, therefore, outside of the LMMA. The El-dridge court found that the claims lTnfelI under care, treatment and assessment so as to require presentation to a medical review panel. It was noted that expert medical testimony would be needed to determine if the standard of care was breached with respect to care and treatment, as the actions involve treatment modalities and the need therefor. Finally, the actions involved the assessment, or lack thereof, of the resident’s condition.
In Guillory v. Royal, Inc., 07-754 (La.App. 3d Cir.12/5/07), 971 So.2d 1234, suit was brought by the children of a nursing home resident who choked while eating peaches, and died. The resident had a history of choking and had previously been hospitalized as a result of choking on a sandwich. Her physician had instructed the staff to assist and supervise her while eating. After her death, the plaintiffs filed a petition alleging that the nursing home failed to adequately monitor the resident, failed to follow doctor’s orders to assist and supervise the resident while eating and failed to promptly attend to the resident after observing that she was choking. The nursing home filed an exception of prematurity, which was maintained by the trial court. The children appealed, but the appellate court affirmed, finding that the allegations sounded in medical malpractice. The court found that the children’s failure to submit the claim to a medical review panel rendered the petition premature. The court also found their suit required the testimony of experts regarding assessment, monitoring, supervision of the resident, as well as the applicable standard of care and analysis of the professional skill required in attending to a patient in distress.
|nIn the case at bar, Plaintiffs admit that Mr. Campbell suffered from a stroke and Alzheimer’s disease and that he required care and supervision during daily activities. Further, approximately one month prior to his death, Mr. Campbell was evaluated for dysphagia, and the speech language pathologist made a recommendation for his care indicating that he should eat pureed solids and thin liquids. She also recommended that he should have occasional supervision during meals. Plaintiffs alleged that Defendant failed to properly supervise Mr. Campbell during meals and that this lack of supervision led to his death. They also alleged that the staff was not adequate in numbers to meet his needs and that they failed to implement a plan of care to meet his needs. Further, Plaintiffs alleged that the staff was not properly trained to care for his specific medical condition and needs. Most of these allegations are identical to those raised by the plaintiffs in Eldridge, supra.
After reviewing Plaintiffs’ allegations in light of the Coleman, supra, factors, we determine this claim as one sounding in medical malpractice requiring the testimony of experts regarding the assessment, *443 monitoring and supervision of the decedent, as well as the applicable standard of care, an analysis of the professional skill required in attending to a patient in distress and a review of the correctness of the staffs actions in following the speech pathologist’s recommendations. Ultimately, a determination must be made as to whether there was negligence in the health care provided to Mr. Campbell. We, therefore, find that Defendant’s assignment of error has merit.
| ^CONCLUSION
For the foregoing reasons, as to the judgment of the trial court overruling the peremptory exception of no right of action filed by Defendant, Nexion Health at Claiborne, Inc., d/b/a Claiborne Healthcare Center, the writ is denied. As to the judgment finding moot the dilatory exception of prematurity filed by Nexion Health at Claiborne, Inc., d/b/a Claiborne Healthcare Center, the writ is granted, the exception is sustained and the writ is made peremptory. Costs of this writ application are assessed equally between the parties.
WRIT GRANTED IN PART, EXCEPTION SUSTAINED AND MADE PEREMPTORY. WRIT DENIED IN PART.

. Specifically, Plaintiffs alleged that Defendant was responsible for the following reasons:
A. Failing to provide adequate supervision and instruction, and training on the needs of Jerry Don Campbell;
B. Failing to provide adequate attention and care to Jerry Campbell;
C. Failing to properly inform the patient and his sponsor of a change in medical status, injuries and accidents;
D. Failing to provide a safe environment and one free of accident hazards and injuries;
E. Failing to properly respond to the patient’s needs and requests of family;
F. Failing to provide adequate number of trained personnel to ensure proper safety, supervision and assistance as required by Mr. Campbell's safety;
G. Failing to implement adequate policies, procedures, protocols and plans of care to meet the needs of patients;
H. Failing to allocate and budget adequate money for qualified and trained nursing staff and to ensure those providing patient care were competent, caring.?