Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,377-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| KEVIN SWAIN, CHRIS SWAIN, PAMELA RUSSELL, AND CYNTHIA DIANE JORDAN, EACH INDIVIDUALLY AND ON BEHALF OF THEIR MOTHER, LERA SWAIN, DECEASED | Plaintiffs-Appellants |

versus

| | |
|---|---|
| DR. KELLY LAMBARD, DR. THARWAT GHATTAS, EMACHANEL JOHNSON, NP, WILLIS KNIGHTON HEALTH SYSTEM, D/B/A WILLIS KNIGHTON SOUTH, PROVIDER HEALTH SERVICES, AND PMG OPCO - GUEST HOUSE, LLC | Defendants-Appellees |

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 637,104

Honorable Michael A. Pitman, Judge

* * * * *

| | |
|---|---|
| KOSMITIS BOND, APLC By: Georgia Patricia Kosmitis Avery Elizabeth Bond | Counsel for Appellants |
| WATSON, BLANCHE, WILSON & POSNER, LLP | Counsel for Appellees, Willis-Knighton South, |

By: Adrien G. Busekist
    Colin Thomas Munn

Willis-Knighton Health
System, and Dr. Kelly
Lambard, MD

PETTIETTE, ARMAND, DUNKRLMAN,
WOODLEY & CROMWELL
By: Lawrence Wayne Pettiette, Jr.
    Joseph Samuel Woodley

Counsel for Appellees,
Emachanel Johnson, NP,
Provider Health Services,
LLC, and Louisiana
PHS, LLC

LUNN IRION LAW FIRM, LLC
By: Ronald Everett Raney
    Patrick Willer Woolbert

Counsel for Appellee,
PMG OPCP- Guest
House, LLC

PUGH, PUGH & PUGH, LLP
By: Robert Gahagan Pugh, Jr.

Counsel for Appellee,
Dr. Tharwat Ghattas,
MD

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**STONE, J.**

This appeal arises from the First Judicial District Court, the Honorable Michael Pitman presiding. The plaintiffs filed a civil action and instituted medical review panel proceedings alleging, *inter alia*, that the death of their mother, Lera Swain ("Ms. Swain"), was due to the conduct of her healthcare providers. They named as defendants multiple health care providers, including PMG-OPCO Guest House, LLC ("Guest House"), the nursing home in which Ms. Swain resided from February 2016 until her discharge to hospice on July 7, 2021. The district court granted an exception of prematurity upon finding that all of the claims in the petition constituted allegations of "medical malpractice," and therefore are required to first be considered by the medical review panel before they may be brought in district court. Accordingly, the trial court dismissed the entire case without prejudice. The plaintiffs filed this appeal, arguing that the trial court erred in its classification of the claims against Guest House as claims of "medical malpractice." For the reasons stated herein, we amend and affirm the trial court judgment.

## FACTS AND PROCEDURAL HISTORY

This paragraph is a narrative of the events based on the allegations of the petition and supplemental/amending petition. On June 6, 2021, while Ms. Swain was a resident at the Guest House, she became unresponsive and as a result was transferred to the hospital. She was found to be suffering from a urinary tract infection ("UTI") which had progressed into sepsis and then septic shock. On June 14, 2021, the hospital discharged Ms. Swain and transferred her back to the Guest House. Thereafter, she became severely dehydrated and suffered significant unplanned weight loss. Ms. Swain's

legs became swollen and dark, and on June 21, 2021, she was returned to the emergency room; her treating physician there ordered that Ms. Swain be given one liter of fluid and antibiotics, and discharged Ms. Swain back to the Guest House. Ms. Swain never overcame the infection, and on July 8, 2021, she was discharged to hospice. She died on July 11, 2021.

The particular allegations concerned in this appeal are that: (1) the Guest House contractually agreed to provide, among other things, basic residential care in accordance with applicable regulations and licensure requirements to Ms. Lera Swain in exchange for $6,000 per month; (2) the Guest House did so despite the fact that the Guest House knew it could not adequately care for Ms. Swain; (3) neither the Guest House nor any of its representatives or affiliates ever disclosed to Ms. Swain or her family (the plaintiffs) or her representatives that the Guest House was unable to provide the required level of care to Ms. Swain; (4) the Guest House failed to provide Ms. Swain with adequate quantities of food and water needed for her maintenance, and for her recovery from her UTI/sepsis; (5) the Guest House failed to keep records of her intake of food and water, and her output of bodily waste; (6) the Guest House failed to properly care for Ms. Swain's hygiene and cleanliness; (7) these actions, among others, led to dehydration, undernourishment, and unplanned weight loss, which contributed to Ms. Swain's continued inability to overcome her UTI/sepsis; (8) ultimately, Ms. Swain became septic, went into septic shock, and died as a result of the ongoing UTI/sepsis; and (9) the plaintiffs suffered pecuniary and nonpecuniary losses, including medical bills.

## DISCUSSION

We begin by explaining the procedural framework of medical malpractice litigation under Louisiana law. The Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1231.1 *et seq.*, requires that all claims arising from medical malpractice against a qualified health care provider first be processed by a medical review panel before such claims may be brought in court. In *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-0008 (La. 9/5/07), 966 So. 2d 519, 523–24, the Louisiana Supreme Court reiterated that "the LMMA and its limitations on tort liability for a qualified health care provider apply *only* to claims 'arising from medical malpractice,' and that all other tort liability on the part of the qualified health care provider is governed by general tort law." Thus, "any ambiguity should be resolved in favor of the plaintiff and against finding that the tort alleged sounds in medical malpractice." *Id.*

*Lacoste* also explained the role of the dilatory exception of prematurity in relation to the LMMA:

> The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination, because an action will be deemed premature when it is brought before the right to enforce it has accrued. Under the LMMA, a medical malpractice claim against a private qualified health care provider is subject to dismissal on an exception of prematurity if such claim has not first been presented to a medical review panel. This exception is the proper procedural mechanism for a qualified health care provider to invoke when a medical malpractice plaintiff has failed to submit the claim for consideration by a medical review panel before filing suit against the provider. In such situations, the exception of prematurity neither challenges nor attempts to defeat the elements of the plaintiff's cause of action; instead, the defendant asserts the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement.

3

*Id.*

The burden of proving prematurity is on the exceptor. *Id.* To prevail on the exception, the exceptor must show that it is entitled to a medical review panel because the allegations fall within the LMMA. Where no evidence is presented at trial of a dilatory exception, such as prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. *Id.* Louisiana uses a fact pleading system, under which "[n]o technical forms of pleading are required," and "[e]very pleading shall be construed as to do substantial justice." La. C.C.P. arts. 854 & 865. "The plaintiff need not plead a theory of the case, but only facts that would support recovery." *Celcog, L.L.C. v. Perkins*, 54,254 (La. App. 2 Cir. 5/18/22), 340 So. 3d 1259, *writ denied*, 22-00959 (La. 11/1/22), 349 So. 3d 9, *and cert. denied sub nom. Perkins v. Celcog, LLC*, 143 S. Ct. 1004, 215 L. Ed. 2d 139 (2023).

La. C.C.P. art. 933(B) provides the plaintiff an opportunity to amend the petition in response to the grant of a dilatory exception:

> When the grounds of the …[objection]… pleaded in the dilatory exception may be removed by amendment of the petition or other action by plaintiff, the judgment sustaining the exception shall order plaintiff to remove them within the delay allowed by the court, and the action, claim, demand, issue or theory subject to the exception shall be dismissed only for a noncompliance with this order.

Whether a claim sounds in medical malpractice is a question of law reviewed under a *de novo* standard. *Thomas*, 19-00507, p. 8, 347 So. 3d at 601; *Jackson v. Willis Knighton Health System*, 54,405, p. 5 (La. App. 2 Cir. 4/13/22), 337 So. 3d 625, 628; *Matherne v. Jefferson Parish Hosp. District*

4

*No. 1*, 11-1147, p. 4 (La. App. 5 Cir. 5/8/12), 90 So. 3d 534, *writ denied*, 12-1545 (La. 10/12/12), 98 So. 3d 373.

La. R.S. 40:1231.1(A) provides several essential definitions for purposes of classifying a claim as medical malpractice or an ordinary tort:

> (9) "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement…

> (13) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient…

Thus, the LMMA only covers claims sounding in "unintentional tort" and "breach of contract" based on "healthcare or professional services" rendered, or which should have been rendered, by a healthcare provider to a patient. *Id*. Intentional torts and contract claims not based the healthcare provider's failure to perform healthcare/professional services properly are excluded from coverage by the LMMA.

In *Richard v. Louisiana Extended Care Centers, Inc.*, 02-0978 (La. 1/14/03), 835 So. 2d 460, 468, the Louisiana Supreme court stated the following with regard to claims against nursing homes:

> [T]he nursing home resident is not always receiving medical care or treatment for any specific condition, but can always be said to be "confined" to the nursing home. However, in our view, it was not the intent of the legislature to have every "act, ..., by any health care provider ... during the patient's ... confinement" in a nursing home covered by the MMA. La. R.S. 40:1299.41 (A)(9) defining "health care" under the MMA). While the alleged act did involve the handling of a patient under La. R.S. 40:1299.41(A)(8), it does not necessarily constitute medical malpractice. As we have previously held in *Coleman v. Deno,* 01–1517 (La.1/25/02), 813 So.2d 303, 315–316, to be covered under the MMA, the negligent act

5

must be related to medical treatment.

In *Coleman v. Deno, supra*, the Louisiana Supreme Court set forth the following 6 factors for determining whether certain conduct by a qualified health care provider constitutes medical malpractice as defined under the MMA:

> [1] whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,
> [2] whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached, and
> [3] whether the pertinent act or omission involved assessment of the patient's condition.
> [4] whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,
> [5] whether the injury would have occurred if the patient had not sought treatment, and
> [6] whether the tort alleged was intentional.

This court has rendered several decisions applying the *Coleman* factors to particular factual scenarios, including the scenario presented in this case. Most recently, in *Patterson v. Claiborne Operator Grp., L.L.C.*, 55,264 (La. App. 2 Cir. 11/15/23), we held that allegations that an understaffed nursing home accepted a patient despite knowing it was understaffed, and thereafter failed to provide adequate care (including failure to hydrate and feed the patient), did not and could not establish the intent necessary for an intentional tort:

> [T]he [plaintiffs'] claims…are all related to an alleged failure to *provide care*, which is the very essence of the LMMA … [A]lthough intent need be alleged only generally, something more than a conclusory allegation of intentional conduct is required to state a cause of action in [intentional] tort. Simply alleging acts that themselves fall squarely within the ambit of the LMMA, then labelling CRC's alleged failure to have adequate staff available to perform said acts as intentional because CRC management intentionally under-or inadequately staffed its facility will

6

not morph the negligent acts or inactions of that staff into intentional acts.

However, we further held that whether failure to feed or hydrate a nursing home patient is covered by the LMMA depends on whether the patient's treatment plan addresses nutrition and/or hydration.[1] We stated:

> Regarding plaintiffs' claims of inadequate care as to nutrition we observe that not all such claims will arise pursuant to a treatment plan or under a physician's orders, e.g., such as for a patient with a restricted diet due a diagnosis of colitis or diabetes. Likewise, failure to properly hydrate residents also may arise outside of a treatment plan. If plaintiffs can amend their petition to assert such claims, those would sound in tort and not be required to first be presented to a medical review panel.

Accordingly, we amended the trial court judgment to allow the plaintiffs an opportunity to state such claims. *Id.*

In *McDowell v. Garden Ct. Healthcare, L.L.C.,* 54,645 (La. App. 2 Cir. 8/10/22), 345 So. 3d 506, 512, *writ denied,* 22-01364 (La. 11/16/22), 349 So. 3d 999, this court recently addressed allegations of failure to adequately feed and hydrate a nursing home resident, and held that the claims arose from medical malpractice, and therefore, were subject to the limitations of the LMMA. The plaintiffs argue that *McDowell* is distinguishable because it addressed claims not against the custodial nursing home, but instead, against the treating nurse practitioner and her employer (which hired out the nurse practitioner to the custodial nursing home). The

---

[1] In *Campbell v. Nexion Health at Claiborne, Inc.,* 49,150 (La. App. 2 Cir. 10/1/14), 149 So. 3d 436, the nursing home resident – who suffered from Alzheimer's and a stroke – died from choking on a peanut butter sandwich. His family brought suit against the nursing home alleging that its negligent supervision and monitoring of the resident resulted in his death. Pursuant to the *Coleman* factors, we held that these allegations were subject to the LMMA.

allegations against the nurse practitioner were that she failed to properly assess, consider, and treat the decedent's nutritional and hydration status. *Id.*

This court, in *Henry v. W. Monroe Guest House, Inc.,* 39,442 (La. App. 2 Cir. 3/2/05), 895 So. 2d 680, held that a claim against the custodial nursing home *for loss of personal dignity* resulting from the nursing home's failure to check and change the resident's adult diaper in a timely manner did not arise from medical malpractice within the meaning of the LMMA,[2] but the physiological injuries and/or sicknesses resulting from the negligent diapering *were* subject to the LMMA.[3]

In *Evans v. Heritage Manor Stratmore Nursing & Rehab. Ctr., L.L.C.,* 51,651 (La. App. 2 Cir. 9/27/17), 244 So. 3d 737, 743, *writ denied,* 17-1826 (La. 12/15/17), 231 So. 3d 639, a panel of this court held that physical injury received when the nursing assistant (Ms. June Edwards) punched the patient in the eye and clawed his face with her long acrylic nails while changing his diaper was subject to the LMMA; the injuries sued upon were physiological, not a loss of dignity.[4]

---

[2] Instead, we held that claims for loss of dignity fell under La. R.S. 40:2010.8(A)(9) and La. R.S. 40:2010.9, the Nursing Home Resident Bill of Rights (the "NHRBR"), which does not authorize recovery for actual damages.

[3] *Accord, Burks v. Christus Health Monroe*, 39,540 (La. App. 2 Cir. 4/6/05), 899 So. 2d 775, *writ denied,* 05-1184 (La. 11/28/05), 916 So. 2d 146; *Wendling v. Riverview Care Ctr., LLC*, 54,958 (La. App. 2 Cir. 4/5/23), 361 So. 3d 557 (also holding that actual damages from loss of dignity resulting from negligent diapering are actionable under La. C.C. art 2315).

[4] It must be noted that the procedural posture of *Evans* makes it quite distinct from the instant case and the other cases discussed herein. Specifically, *Evans* involved a defendant's exception of prescription seeking to classify the claim as an ordinary (non-malpractice) tort because, then, filing the MRP complaint would not have suspended prescription as to this claim (and it would have been prescribed). *Evans* kept alive the plaintiff's claim for being punched and clawed in the face. The holding – that the patient's claim based on being punched and clawed did not sound in intentional tort – carried the necessary implication that the filing of the MRP complaint *did* suspend prescription as to that claim. However, while the outcome of this court's decision in *Evans* may have been desirable, it cannot be reconciled with Louisiana's basic law of civil battery, as expressed by our supreme court in *Caudle v. Betts*, 512 So.2d 389, 391 (La. 1987). *Caudle* teaches

The instant case is in part governed by the aforementioned jurisprudence. To the extent that the suit against the Guest House is for wrongful death and survival and any other damages resulting from physical injury or sickness to Ms. Swain, it is potentially subject to the LMMA, depending on whether hydration and feeding were (or should have been) part of Ms. Swain's treatment plan. *Patterson, supra*. The plaintiffs have not stated a cause of action for an intentional tort causing Ms. Swain any personal injury. *Id.* Likewise, the petition does not even attempt to allege facts that would support a claim for loss of dignity.

However, aside from loss of dignity, wrongful death, survival, or other personal injury, there remains another claim in the petition: recovery of the $6000 per month worth of payments given to the Guest House as payment for its services to Ms. Swain. A claim to recover payments made pursuant to a contract for services – health care or otherwise – is not a claim based on "unintentional tort," but instead, sounds in contract. However, "breach of contract" also is explicitly covered by the LMMA. La. R.S. 40:1231.1(A)(13). Thus, recovery of the payments on a theory of *breach* of contract is premature.

Nonetheless, if the consent to the contract to provide health care was vitiated by fraud or error, an action for *rescission* of contract exists.[5] While the LMMA extends to damages caused by *breach* of contract in the rendition

---

that intent to cause contact which is harmful or offensive is sufficient intent for battery, even if the tortfeasor had no intent of causing the physical harm that resulted from the contact.

[5] La. C.C. art. 2033. Vices of consent include error (La. C.C. arts. 1948-1952) and fraud (La. C.C. arts.1953-1958). An action to rescind/nullify a contract is also subject to La. C.C. arts. 2029-2035.

of health care or other professional services, it does not extend to *rescission* of a contract due to nullity. La. R.S. 40:1231.1(A)(13). This holding bears special emphasis in light of the requirement that the scope of the LMMA be strictly construed. *LaCoste, supra*.

The allegations in the petition and supplemental petition outlined herein indicate that there may exist a basis for rescission of contract due to fraud or error; however, the petition does not allege that the error or fraud influenced the decision to contract long term care with the Guest House. With regard to this potential cause of action, the plaintiffs are entitled to leave of court to amend their petition to allege reliance on or influence by the fraud or error. If the petition is amended to state a cause of action for rescission of contract, then that action will not be subject to the LMMA, and therefore *not* premature. If not so amended, the only action sounding in contract in the petition will be for breach of contract, which is subject to the LMMA and thus is premature.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court granting the dilatory exception of prematurity is amended in part to order plaintiffs, if they can, to cure their petition by removing the grounds of prematurity as to the custodial and contractual claims asserted therein. The judgment is affirmed as to all other claims, which are properly before the medical review panel.

**AMENDED IN PART, AND AS AMENDED, AFFIRMED.**

10