Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,423-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MARINA HOMEOWNERS                    Plaintiff-Appellee
ASSOCIATION, INC.


versus


SEAN CAHILL AND MELISSA              Defendants-Appellants
CAHILL

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 641,978


Honorable Christopher T. Victory, Judge

* * * * *

ROWE & MANNING LAW FIRM              Counsel for Appellants
By: William C. Rowe, Jr.
     Joseph S. Manning
     Nicole G. Courville


LUNN IRION LAW FIRM, LLC             Counsel for Appellee,
By: Patrick W. Woolbert              Marina Homeowners
                                     Association, Inc.


WIENER, WEISS & MADISON, APC         Counsel for Appellee,
By: Geoffrey D. Westmoreland         Kim French


* * * * *

Before COX, MARCOTTE, and ELLENDER, JJ.

**COX, J.**

This civil appeal arises from the First Judicial District Court, Caddo Parish. Plaintiff, Marina Homeowner's Association, Inc., ("MHA") filed a petition seeking declaratory judgment that defendants, Sean and Melissa Cahill ("the Cahills"), use of their Shreveport home as a short-term rental was in violation of the covenants of the homeowner's association. MHA also sought a permanent injunction against the Cahills, enjoining them from further violations of the covenants. In turn, the Cahills filed an exception of no right of action, arguing that the covenants were no longer in effect as they were subject to a term that expired. The trial court ruled in MHA's favor, denying the Cahills' exception of no right of action.

For the following reasons, we affirm the trial court's ruling.

## FACTS

In December 2020, the Cahills purchased a home located at 1706 Harbor Drive in Shreveport, Louisiana. The property is located in the Willow Ridge Subdivision (the "Subdivision") and is subject to a Declaration of Covenants, Conditions and Restrictions ("the Declaration"), which was filed in the registry of conveyance on September 23, 1982. Article VII of the Declaration, concerning building restrictions and use, provides:

> **ARTICLE VII - <u>USE RESTRICTIONS</u>**
> <u>Section 1.</u> <u>Land Use and Building Type</u>. No Lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one single-family dwelling not to exceed three stories in height above the ground level of highest elevation on which any portion of the main building is erected, and a private garage and such outbuildings as are customarily appurtenant to dwellings, every building except a greenhouse to correspond in style and architecture to the dwelling to which it is appurtenant. No outbuilding shall exceed the swelling to which is appurtenant in

height, number of stories or size. A garage or carport to house
at least one automobile much be provided for each lot.

On February 2, 2023, MHA sought a permanent injunction, claiming that the

Cahills violated Article VII.

Specifically, MHA alleged that on August 29, 2022, the Cahills, who

are Oklahoma residents, applied for a short-term rental property permit

under the name Cahill Dream Properties. The permit was approved on

September 7, 2022, and the Cahills listed the property on short-term rental

websites such as Airbnb and VRBO. MHA notes that it sent the Cahills a

written demand for them to cease operation of their property as a

commercial business, i.e., a short-term rental, lodging quarters, or hotel.

On October 25, 2023, the Cahills filed an exception of no right of

action wherein they asserted that the covenants of the Declaration expired

and were no longer enforceable. Specifically, the Cahills asserted that the

plain language of the Declaration provides a definite term with a specific

start and end date under Article VIII, Section 3, entitled "Amendments,"

which provides:

> The covenants and restrictions of this Declaration shall run with
> and bind the land, and shall inure to the benefit of and be
> enforceable by the Association or the owner of any lot subject
> to this Declaration, their respective legal representatives, heirs,
> successors and assigns, for a term of twenty (20) years from the
> date this Declaration is recorded, after which time said
> covenants shall be automatically extended for successive period
> of ten (10) years. The covenants and restrictions of this
> Declaration may be amended by an instrument signed by not
> less then seventy-five percent (75%) of the members of the
> Association. Any amendment must be properly recorded.

The Cahills argued that because the Declaration was filed on September 23,

1983, the 20-year term was enforceable until September 23, 2002, and then

automatically extended for a successive period of 10 years, which ended on September 23, 2012.

The Cahills maintained that no documents were filed to change the language of this section, and no amendments were filed to continue the existence or the enforceability of the covenants in accordance with Section 3 of Article VIII. The Cahills asserted that the drafters intended that an amendment be filed and recorded to extend the terms of the Declaration, and because none was filed, the terms of the Declaration were not enforceable at the time the property was purchased, nor is it enforceable at the time the permanent injunction was filed.

A hearing on the matter was held on November 28, 2023. Before testimony was presented, counsel for the Cahills reiterated the argument that the exception of no right of action should be granted. Counsel argued that homeowner associations ("HOAs") are governed by their documents, and regardless of any errors, should be interpreted against the drafters. Counsel argued that in this case, the language of the Declaration provides for a term, which indicates a definitive end, except in the event that an amendment is filed and recorded to extend or renew the term of the covenants.

Counsel for MHA argued that provisions of the Louisiana Homeowners Association Act ("LHAA") regarding building restrictions supersede La. C. C. Art. 783, which entails that interpretations of contracts must be construed against the drafter. Specifically, MHA's counsel argued that La. R.S. 1141.4 provides that the existence, validity, or extent of a building restriction affecting any association property shall be liberally construed to give effect to its purpose and intent. In this case, the language of the Declaration indicates that the covenants "automatically extended for

3

successive period of 10 years." Counsel maintained that there is an error in the language so that it's meant to provide for successive *periods* of 10 years. Regardless, counsel maintained that the term "successive" indicates that the covenants were meant to continue term after term. Further, counsel argued that the language found in the Declaration was standard language found in most restrictive HOAs whose terms are meant to extend benefits to its members into perpetuity.

Following arguments from counsel, the following pertinent testimony was presented:

First, Dianna Martin ("Martin"), a resident of the Willow Ridge Subdivision and a committee member of the MHA's architectural control committee ("ACC"), testified she lives two houses away from the Cahill residence. Martin stated that in 2022, the ACC noticed that some residents, including the Cahills, used their properties as short-term rentals. Those owners were informed that they were in violation of the subdivision's covenants. Martin testified that the MHA board held a meeting in which it was decided that short-term rentals were in violation of the covenants.

On cross-examination, Martin stated that when she purchased her home, she did so with the understanding that the properties could not be let out as short-term rentals. After a copy of the Declaration was furnished for Martin to review, she admitted that she could not find any provision or governing bylaw that prohibited short-term or long-term rentals. In turning to a 2023 amendment to the Declaration, Martin explained that the amendment clarified that leases for less than a six-month period were prohibited. Martin then clarified that Article VII of the Declaration provides that "no lot shall be used except for residential purposes."

Next, Harold Sater ("Sater") testified that he was a former resident of the Willow Ridge Subdivision and had been president of the MHA board since 2021 before he moved. Sater stated that during his time as president, he became aware that a few homeowners used their property as short-term rentals, which the MHA board agreed was in violation of the covenants.

Sater stated that in response, he contacted attorneys for MHA and spoke with those homeowners identified as using their properties as rentals. Sater stated that he no longer served as president when the 2023 amendment was passed, but he was aware that it had been discussed and was well-read on the governing provisions of the Declaration. Sater testified that while the Declaration did not contain the term "short-term" rental, it prohibited commercial leases. Sater then admitted that he was not aware of any rentals that the Cahills may have had.

Jane Anderson ("Anderson"), the current president of the MHA board, testified that as part of her duties, she helps to uphold the covenants and maintain the quality of the subdivision. Anderson stated that each resident, including the Cahills, was provided with a copy of the Declaration when they purchased their home. Anderson then stated that in 2019, she and other members of the association were aware that some of the homes in the subdivision were used as short-term rentals. Anderson stated in response, those owners were contacted and informed that use of their properties as commercial businesses violated the terms of the covenants. Anderson stated that a petition was passed throughout the subdivision to allow owners to voice their opinion on the matter. Anderson stated that all of the owners who used their properties as short-term rentals ceased operations voluntarily, except the Cahills.

Anderson stated that after several board meetings, it was decided that rentals were prohibited, and an amendment was passed in 2023 to that effect. In looking at the 2023 amendment, Anderson testified that five members of MHA signed the amendment. Anderson then acknowledged that Article VIII, Section 3 of the Declaration provides that "[t]he covenants and restrictions of this declaration may be amended by an instrument signed by not less than 75 percent of the members of the association. Any amendment must be properly recorded." Anderson testified that although the amendment was not filed, it was meant to reflect that at least 75 percent of homeowners agreed that short-term rentals were in violation of the covenants.

Next, Kim French ("French"), a former resident and board president, testified that she was also familiar with the covenants governing the Willow Ridge Subdivision. French stated that although she no longer serves as president, she stayed on to assist the board. She testified that in 2019, while she was president, she became aware that there were homeowners who listed their homes on short-term rental websites. French stated that, generally, the covenants provide that homes are to be used for residential purposes, so the board informed those owners that their rentals were in violation of the covenants.

Further, French stated that she only contacted the Cahills regarding their property being used as short-term rental to inform them that guests could not have open access to common areas that MHA maintained, such as the pool and marina. French testified that although she was not a board member during this time, members of the board asked her to communicate with the Cahills. However, French maintained that she never gave the

Cahills permission to continue operation of their short-term rental because she did not have the authority to either allow them to continue operations or to stop the operations altogether.

Sean Cahill ("Sean") testified that he purchased his home in the Willow Ridge Subdivision so he and his family would have a place to stay when visiting the area. Sean admitted that he rented the property approximately seven to eight times in 2022 and approximately three times in 2023 but stated that renting was not profitable as he primarily rented to those in need. Sean explained that he did not have any employees and managed the property himself. Sean stated that French contacted him about the use of the property as a short-term rental, but French only relayed that she did not like short-term rentals, and there was nothing MHA could do about it; instead, she only requested that he update the listing as it concerned the marina.

Sean stated that he believed this meant he could continue to use the property as a short-term rental. He maintained that he was not informed that he could not use his property as a short-term rental, that no one from the board contacted him about the property, and that no one informed him that the board held a meeting to address the issue of short-term rentals. Sean confirmed that he and his wife purchased property in the Willow Ridge Subdivision and listed the property on websites such as Airbnb and VRBO under their LLC, Cahill Dream Properties. He stated that guests would stay no longer than six nights at the property. In reviewing his short-term rental permit from the Municipal Planning Commission of the City of Shreveport, Sean admitted that the permit provided:

> I understand that any homeowners association, townhome association, or similar association may prohibit short-term rentals through their bylaws, covenants, codes, and/or restrictions (or any other agreement governing and limiting the use of proposed short-term rental). It is my responsibility to contact any such association, as applicable to determine if short-term rentals are allowed.

Sean stated that the paperwork was only signed after he spoke with French about the property being used as a short-term rental. On cross-examination, Sean admitted he did not regularly attend MHA meetings for residents but stated he was under the impression that someone would contact him for important information as previously done.

Finally, Melissa Cahill ("Melissa"), Sean's wife, reiterated that she and Sean purchased the home in the Willow Ridge Subdivision so that they and their family would have a place to stay when they visited the area. Melissa then reviewed a copy of the Declaration and stated that upon her viewing, there was nothing that prohibited the use of their property as a short-term rental. Melissa confirmed that a section of the Declaration provided:

> Any member may delegate in accordance with the rules of the association his right of enjoyment of the common area and facilities to the members of his family, his tenants, invitees or others who lawfully reside on a lot.

She explained that she understood this provision to mean that as an owner, her family, visitors, and tenants were permitted to use common facilities. Further, she stated that the term "tenant" meant that as an owner of a lot, she was permitted to lease her property. Melissa testified that French contacted her and Sean about the rental, but the conversation only concerned removing access to the pool and marina for their rental to continue operation. Melissa stated that French was the only person to

8

contact either her or Sean about the rental, and at no time did they receive a notice that the board would vote on whether short-term rentals were permissible.

At the close of testimony and closing arguments, the trial court denied the Cahills' exception of no right of action and granted MHA's permanent injunction. This appeal followed.

**ARGUMENT**

On appeal, the Cahills raise two assignments of error, arguing that the trial court erred in: (1) denying their exception of no right of action, finding that the Declaration of the Willow Ridge subdivision remained in full force and effect; and (2) granting MHA's permanent injunction, prohibiting the Cahills from using their property as a short-term rental.

Specifically, the Cahills argue that they were not in violation of the Declaration's applicable building restrictions in using their property as a short-term rental because the Declaration expired on September 23, 2012, and was no longer binding or enforceable. The Cahills highlight that Article VIII, Section 3 provides, in part:

> The covenants and restrictions of this Declaration shall run with and bind the land, and shall inure to the benefit of and be enforceable by the Association or the owner of any lot subject to this Declaration, their respective legal representatives, heirs, successors and assigns, for a *term* of twenty (20) years from the date this Declaration is recorded, after which time said covenants shall be automatically extended for *successive period of ten (10) years*. The covenants and restrictions of this Declaration may be amended by an instrument signed by not less than seventy-five percent (75%) of the members of the Association. Any amendment must be properly recorded." (Emphasis added).

The Cahills maintain that the drafters' use of the word "term," and the singular, rather than the plural use of the word "period" indicates that the

9

drafters intended the Declaration to have a definitive expiration, rather than exist into perpetuity. Moreover, the Cahills argue that the Declaration was recorded on September 23, 1982, and in accordance with this provision, was meant to expire after 30 years, unless an amendment was filed and recorded to extend the enforceability of the Declaration. In this case, the Cahills have asserted that no amendment was filed prior to September 23, 2012, to either amend the language of the provision or extend the terms of the Declaration beyond the automatic 10-year extension.

Finally, the Cahills address MHA's assertion that the exclusion of an 's' to the word "period" was simply a clerical error, and the Declaration's 20-year term is meant to automatically renew for successive periods of 10 years. The Cahills argue that HOA covenants are likened to contracts, and are subject to the same interpretation and enforcement, i.e., if any ambiguity exists in a provision, it must be interpreted against the party who furnished its text. Moreover, when a dispute arises as to the extent or limitation of a restriction encumbering an immovable, courts should look to the intent of the encumbering the property as set forth in the instruments embodying the restrictions, giving due consideration to the entire document.

The Cahills maintain that the drafters' intent is clear from the use of the word "term," indicating a definitive end, and the singular use of the word "period." Moreover, the Cahills maintain that Article VIII, Section 3 is entitled "Amendments," which further indicates that the drafters intended that an amendment be filed to extend the terms of the Declaration. They maintain that any clerical errors or typos, as proposed by MHA, should be interpreted against MHA.

**DISCUSSION**

An action can be brought only by a person who has a real and actual interest which he asserts. La. C. C. P. art. 681. An exception of no right of action is a peremptory exception, the function of which is to show that, based upon the facts alleged and the evidence submitted, a plaintiff has no legal right or interest in enforcing the matter asserted. *Campbell v. Nexion Health at Claiborne, Inc.*, 49,150 (La. App. 2 Cir. 10/1/14), 149 So. 3d 436. It asks whether the plaintiff belongs to the class of person to whom the law grants the cause of action asserted. *Id.* The objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on. *Id*.

The exception does not raise the question of the plaintiff's ability to prevail on the merits, nor the question of whether the defendant may have a valid defense. *Garrison v. James Const. Group, LLC*, 14-0761 (La. App. 1 Cir. 5/6/15), 174 So. 3d 15, *writ denied*, 15-1112 (La. 9/18/15), 178 So. 3d 146. The burden of proof of establishing the exception of no right of action is on the exceptor. *Campbell, supra*. Exceptions of no right of action presents a question of law; therefore, an appellate court conducts a de novo review of the trial court's action on this exception. *Matter of BCL Invs., L.L.C.*, 52,387 (La. App. 2 Cir. 1/16/19), 264 So. 3d 675, *writ denied*, 19-0276 (La. 4/22/19), 268 So. 3d 296.

In the present case, the Declaration not only established the Willow Ridge Subdivision but also subjected homeowners to certain building restrictions. Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing construction standards, specified uses, and improvements. La. C.C. art. 775. Such restrictions are

11

classified as real rights likened to predial servitudes. La. C.C. art. 777. Building restrictions are ordinarily created by developers of land who intend to subdivide their property into individual lots for specific purposes. La. C.C. art. 776, Comment (b); *McGinty v. Majeste*, 30,384 (La. App. 2 Cir. 4/8/98), 711 So. 2d 333. Where there is doubt as to the existence, validity, or extent of building restrictions, the issue should be resolved in favor of the unrestricted use of the immovable. La. C.C. art. 783; *McGinty*, *supra*.

Once building restrictions are recorded in the public records, a subsequent acquirer of immovable property burdened with such restrictions is bound by them. *Childers v. Laurel Lakes Ests. Homeowners' Ass'n, Inc.*, 22-0936, (La. App. 1 Cir. 5/24/23), 368 So. 3d 1123. In the case of building restrictions imposed on a subdivision, the restrictions may be likened to a contract among the property owners and the developer. Thus, when disputes arise as to the extent or limitation of a restriction affecting immovable property, courts look to the express intention of the party encumbering the property as set forth in the instruments embodying the restrictions, giving due consideration to the entire document. *Id*.

In this Court's de novo review, we find that the trial court did not err in denying the Cahills' exception of no right of action or in granting MHA's permanent injunction. As provided in Article VIII, Section 3, the covenants and restrictions of the Declaration continue to run with and bind the land until 20 years from the date of recordation, and thereafter, automatically renew for additional 10-year successive periods. Although "period" is singular, the word "successive" immediately preceding it indicates that the

12

drafters intended there to be multiple, automatic 10-year periods following the initial 20-year anniversary date.

Despite the Cahills' assertion to the contrary, the provision does not provide that an amendment must be filed and recorded to extend the term of the Declaration; rather, the provision specifically provides that the *covenants and restrictions*, may only be "amended by an instrument signed by not less than seventy-five percent (75%) of the members of the Association." The provision is silent as to the actions members of the association must take to terminate or prevent the expiration of the Declaration.

However, even if the language of Article VIII, Section 3 was ambiguous, La. R.S. 9:1141.3(E) provides that "[t]he existence, validity, or extent of a building restriction affecting any association property shall be liberally construed to give effect to its purpose and intent." In adhering to the language of the statute, we arrive at the same conclusion that the drafters intended for the covenants and restrictions of the Declaration to continue to run with and bind the properties in the subdivision unless otherwise terminated by members of the association. No amendment or instrument was presented purporting to terminate the Declaration; therefore, it remains enforceable, and the trial court correctly denied the Cahills' exception of no right of action.

In determining that the Declaration has not expired, we conclude that the trial court did not err in granting the MHA's injunction. Specifically, Article VII, Section 1, provides in part that, "[n]o [l]ot shall be used except for residential purposes." In the present case, it is established that the Cahills used their property as a short-term commercial business, listed the property on short-term rental websites such as Airbnb and VRBO, and

13

profited from the venture.  Such activities are a clear violation of the provision, and therefore, MHA's injunction to cease use and operation of the home as a business was appropriate.  Accordingly, we affirm the trial court's ruling regarding MHA's injunction.

## CONCLUSION

For the reasons stated herein, the trial court's ruling is affirmed.  Costs of this appeal are assessed against the Cahills.

**AFFIRMED.**